Edmon MORGAN, Walter Brice, Gilbert Stone, Jeff Dodson, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, Sal Minerva, C. R. Johnson, Jessie O. Payne, John F. Peterson, Phil Thorpe, Morris K. Daley, Wallace Benson, Richard E. Hall, Carl K. Lawrence, Clifford W. Swenson, Individually and in their capacities as trustees of the Laborers Pension Trust Fund for Northern California, Defendants.

No. C–76–1250–CBR.

United States District Court,
N. D. California.

June 8, 1977.

Lee Thomas Surh, Katherine T. Bartlett, Clifford C. Sweet, Legal Aid Society of Alameda County, Les A. Hausrath, Legal Aid Society of Alameda County, Alice M. Beasley, Oakland, Cal., Lowell Johnston, San Francisco, Cal., Charles R. Bush, Marin County Legal Aid, San Rafael, Cal., for plaintiffs.

Charles P. Scully, Donald C. Carroll, Stephen G. Schrey, Johnson & Stanton, Thomas E. Stanton, Jr., San Francisco, Cal., for defendants.

## ORDER DISMISSING VARIOUS CLAIMS

RENFREW, District Judge.

This is an action brought against Laborers Pension Trust Fund for Northern California ("Trust Fund")[1] to compel the payment of certain pension benefits heretofore denied to plaintiffs. Plaintiffs, seeking to represent the class of all hourly laborers who are potential beneficiaries of Trust Fund and who have been denied pension benefits for the same reasons as plaintiffs, allege that certain provisions of the Trust Fund agreement and the manner in which they are carried out violate Sections 301 and 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 185 and 186, Section 401 of the Internal Revenue Code, 26 U.S.C. § 401, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. (Supp. IV 1974). Specifically, plaintiffs allege that defendants have violated their fiduciary duties under the above provisions by (1) applying an arbitrary "break in service" rule;[2] (2) enforcing arbitrary and discriminatory vesting requirements; (3) using an arbitrary method of calculating credit

---

1. Plaintiffs also name as defendants ten individuals alleged to be trustees of the Trust Fund. Plaintiffs seek no relief from the trustees as individuals and apparently have not served them. Defendants point out that a number of the individual defendants are no longer serving as trustees and that trustees are not liable in a suit such as this by virtue of Article VII of the Laborers Trust Fund Trust Agreement by which plaintiffs are bound.

2. The "break in service" rule refers to Article IV, Section 6 of the Laborers Trust Fund Rules and Regulations (1974), which provides, in pertinent part:

"It shall be considered a break in employment and an Employee's previously accumulated Pension Credit shall be cancelled if, after his Contribution Date, he fails to earn one quarter of Future Service Credit in a period of two consecutive Plan Years."

Section 6 makes certain exceptions for disability, military service, employment in a supervisory capacity by an individual employer, and employment with a labor organization.

hours;[3] and (4) maintaining inconsistent conflicting, and incomplete records concerning pension credits earned by plaintiffs. Plaintiffs also allege that, by the same actions, defendants have violated their duty of fair representation.

Trust Fund was created by a trust agreement entered into on August 2, 1963, by the Northern California Council of Laborers and the Northern and Central California Chapters of the Associated General Contractors of America, Inc. Prior to the adoption of this agreement, the parties appointed a Joint Committee to work out the details of the initial trust and pension plan. The Joint Committee engaged the consulting services of the Martin E. Segal Company, Inc. ("Segal Company"), in 1962 to aid in drawing up the proposal. The Segal Company supplied the committee with a memorandum dated November 2, 1962, which outlined the basic features of the pension plan, and a detailed Pension Estimate Report dated March 18, 1963. Affidavit of Berton Jacobson, Exhibits A and B (filed Aug. 25, 1976). The Pension Estimate Report summarized employee data from actuarial studies, assumptions used in calculations, alternative pension plans, and the next steps to be taken in developing the program. The Joint Committee tentatively agreed upon a plan on April 2, 1963, and received a revised draft from the Segal Company on August 12, 1963. The Board of Trustees of the Trust Fund ("Board") held its organizational meeting on September 27, 1963, and unanimously adopted the plan approved by the Joint Committee.

The plan adopted in 1963 provided, *inter alia,* that pension rights would vest when an employee reached age 50 with at least 15 years of service;[4] that an employee would receive one year of future service credit if he or she worked 1,000 hours in a plan year and would receive ¼ year service credit for each full 250 hours of work; and that, with certain enumerated exceptions, an employee who fails to earn at least ¼ year of pension credit in two consecutive plan years (a break in service) would lose all of his previously accumulated pension credit. Affidavit of Berton Jacobson, *supra,* Exhibit C at 15b, 10, 13. The vesting provision has since been amended to provide that "[e]ffective February 1, 1973, an Employee's Pension Credit is vested if he has accumulated at least 10 years of Pension Credit." Trust Fund Rules and Regulations, Article IV, Section 7 (1974) ("Trust Fund Rules").

On August 25, 1976, defendants moved to dismiss plaintiffs' complaint or, in the alternative, for summary judgment. Defendants admit that the Court has jurisdiction over this action under § 302(e) of the LMRA, 29 U.S.C. § 186(e), but they argue that the Court does not have jurisdiction under ERISA. Defendants contend that (1) the claims of plaintiffs Brice and Dodson are barred by the statute of limitations; (2) plaintiffs Morgan and Stone have failed to exhaust their remedies under the Trust Fund Agreement and Plan; (3) plaintiffs cannot show that the challenged provisions are arbitrary or discriminatory; (4) this Court does not have jurisdiction to review defendants' alleged errors in computation of service credit; and (5) plaintiffs' claim of a breach of defendants' duty of fair representation does not state a claim upon which relief may be granted. A hearing was held on defendants' motion on November 4, 1976. At that time the parties agreed that defendants' motions were, in part, premature. In light of the November 4th hearing, the

---

**3.** Sections 2 and 3 of Article IV of the Trust Fund Rules and Regulations provide that an employee will receive one year of pension credit for working 1,000 hours during a Plan Year, and ¼ year of credit for every full 250 hours he works. Thus, no matter how many hours an employee works over 1,000 hours he receives only one year of credit, and no matter how few hours he works below 250, he receives no credit. *E. g.,* if an employee works 249 hours, he gets no credit; if he works 499 hours, he gets ¼ year credit, *etc.*

**4.** Once an employee's pension rights have vested, a break in service will not operate to deprive him of previously accumulated pension credit, provided that the employee notifies the pension board as required by the plan. Trust Fund Rules and Regulations, Article IV, Section 7 (1974).

Court will rule on the applicability of ERISA to this case, whether the claims of plaintiffs Brice and Dodson are barred by the statute of limitations, whether plaintiffs Morgan and Stone have exhausted their internal remedies, and defendants' motion to dismiss plaintiffs' second claim.

## I. *APPLICABILITY OF ERISA*

Plaintiffs seek to invoke jurisdiction under ERISA for two purposes: to test defendants' actions under the fiduciary duties established by §§ 401–413 of ERISA, 29 U.S.C. §§ 1101–1113 (Supp. IV 1974), and "to recover benefits due to [plaintiffs] under the terms of [their] plan," pursuant to § 502(a) of ERISA, 29 U.S.C. § 1132(a) (Supp. IV 1974).

### A. *Fiduciary Duties*

■ Plaintiffs allege that defendants breached their fiduciary duties under ERISA by denying pension benefits as the result of certain Trust Fund Rules. Thus, in order to determine whether ERISA is applicable to plaintiffs' claims, the Court must determine if the denials occurred before or after the effective date of the relevant provisions of ERISA.[5]

■ For the purposes of this case, the general fiduciary duties established by §§ 401–413 of ERISA became effective as of January 1, 1975.[6] 29 U.S.C. § 1114(a) (Supp. IV 1974). After examining each

---

**5.** Plaintiffs and defendants apparently agree that plaintiffs' causes of action accrued on the dates their pension applications were denied. After much consideration, the Court agrees.

One might argue that the real wrong committed against plaintiffs occurred not on the date that their applications were denied, but on the date that their prior pension credit was automatically cancelled due to a break in service, or the date on which their service hours were first calculated unfairly or erroneously. When the Trust Fund denied plaintiffs' applications, it merely looked at the hours plaintiffs had accumulated months and years before under settled rules. Moreover, the applicable statute of limitations could be circumvented easily if an employee merely had to file a new application to suffer a new wrong—even though a prior pension had been denied years before on the same grounds.

While this "date of original wrong" argument has some merit, the Court must reject it for a number of reasons. First, such a rule would put an almost intolerable burden on employees covered by pension plans. It would require individuals who are unversed in the law to be constantly vigilant against possible abuses or errors by their pension fund years before they even apply for benefits, or lose the chance to vindicate their rights. ERISA, which was designed to protect the rights of potential pensioners, does not contemplate such a harsh rule. Moreover, claims filed before a pension actually has been denied might be challenged for lack of ripeness. *Cf. United Public Workers v. Mitchell,* 330 U.S. 75, 86–91, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

Requiring piecemeal challenges before an actual denial has occurred would also result in a great waste of judicial resources. Plaintiffs would file separate actions each time an alleged wrong occurred, rather than consolidating all claims in a single suit after their pensions were denied. For example, plaintiff Mor-

gan might have been forced to bring three separate suits at different times to challenge the break in service rule, the method of calculating credits, and the individual alleged errors in computing his hours. The "date of original wrong" rule would also saddle courts with the extremely difficult task of determining exactly when abuses like errors in computation took place, compared to the simplicity and certainty of using the date that the pension application was denied.

Finally, the problem of individuals refiling applications to circumvent the statute of limitations can be avoided if courts hold that claims accrue on the date the application from which they arise was first denied.

At least one court has indicated that an action under ERISA may accrue on the date that a potential pensioner's employment ends. *See Martin v. Bankers Trust Co.,* 417 F.Supp. 923 (W.D.Va.1976). Such a rule seems inappropriate since any wrong that is committed occurs on the date the pension is denied, not when an applicant quits working for an employer. Moreover, the party defendant will always be the pension fund, itself, rather than the company or corporation for which the applicant has worked.

**6.** Defendants argue that the fiduciary duties established in ERISA do not apply to defendants because the more specific provisions of the act dealing with vesting, breaks in service, and calculation of service credit did not go into effect until after all of plaintiffs' applications were denied. *See* 29 U.S.C. §§ 1053, 1061(b). While defendants' premise is correct, their conclusion is not. The fact that the specific provisions were not effective means only that defendants are not bound by their terms. If defendants' administration of the plan violated their general fiduciary duties after January 1, 1975, they are liable as provided for in ERISA.

plaintiff's Trust Fund record, the Court concludes that plaintiffs Morgan and Stone may challenge their pension denials under the fiduciary provisions of ERISA and that plaintiffs Brice and Dodson may not.

Stone first filed his Request for Pension Fund Information on December 15, 1975,[7] and was informed through his attorney by letter dated February 26, 1976, that he was not eligible due to a break in service. Since the denial took place after January 1, 1975, it may be examined under ERISA fiduciary standards. This applies to Stone's challenge of how service credits are computed as well as his challenge of the break in service rule.

Morgan's case is more complicated. Morgan first applied for a pension on May 8, 1967. His application was denied on July 20, 1967, on the ground that he did not have enough credits. Morgan periodically corresponded with the Trust Fund between 1967 and 1975, either directly or through his attorney, inquiring whether he was yet eligible for a pension. On April 1, 1975, the Trust Fund informed Morgan that his prior pension credit had been cancelled due to a break in service in the 1972, 1973, and 1974 Plan Years. Morgan filed a new application on August 20, 1975, which was denied on October 21, 1975. Because Morgan's second application was denied after January 1, 1975, due to a break in service occurring after the denial of his first application, he may challenge the break in service rule under the fiduciary provisions of ERISA.

Morgan also contends that the method by which the Trust Fund computes service credit is a breach of fiduciary duty. He may invoke ERISA to challenge the method of computing service credit involved in the Trust Fund's 1975 decision to deny his pension application, but only with regard to hours worked after his pension application was denied in 1967. In other words, if an employee's pension application was denied before January 1, 1975, he may not invoke the fiduciary standards of ERISA to challenge the reasons upon which that denial was based.

An action to recover pension benefits does not accrue until there has been a "clear and continuing repudiation of the right to trust benefits." *Kosty v. Lewis*, 115 U.S.App.D.C. 343, 319 F.2d 744, 750 (1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964) (footnote omitted). The Trust Fund's policy on computation of hours has always been clear, and there has never been any question whether the Trust Fund would reverse its position on that issue. As a result, Morgan's cause of action to challenge the method of computing service credit earned before the denial of his 1967 application accrued on the date of that denial—before the effective date of ERISA.

This rule may appear harsh, but its alternative would be even less desirable. Anyone who has ever been denied pension benefits would be able to invoke ERISA merely by reapplying and having his application denied again on the same grounds. The resulting litigation would paralyze pension funds and federal courts alike. Congress was very much aware of the potential costs of pension reform and intended to "strike a balance between providing meaningful reform and keeping costs within reasonable limits." H.R.Rep. No. 93–807, 93d Cong., 2d Sess. (1974), 1974 U.S.Code Cong. & Admin. News 4670, 4682. Congress could not have intended to impose such a heavy burden on pension funds and, indirectly, upon the people they serve.

Although the number and scope of such claims might be reduced by imposing the applicable statute of limitations, there is no indication that Congress intended §§ 401–413 of ERISA to be retroactive at all. Congress explicitly provided in § 414 of ERISA, 29 U.S.C. § 1114 (Supp. IV 1974), that the fiduciary provisions of ERISA relevant to this case would become effective on January 1, 1975. Section 414 also provides that some fiduciary obligations would become effective on the date of enactment, while

---

**7.** Stone's Request for Pension Fund Information will be treated as a formal application for

the purposes of this case. *See* pp. 527–529, *infra.*

others could be delayed for up to ten years; nowhere does it state that any ERISA provision will apply to conduct occurring prior to the dates specified. In another context, the House Ways and Means Committee specifically rejected the idea of providing

> "retroactive vesting for employees who have already terminated their service with the employer, since this would create a substantial unexpected cost for the plan (thereby possibly jeopardizing the size of benefits for employees still covered under the plan) and might involve serious recordkeeping problems." H.R. Rep. No. 93–807, *supra*, 1974 U.S.Code Cong. & Admin.News at 4723.

The same reasoning argues against a retroactive application of fiduciary obligations that could result in the recalculation of almost every pension ever denied.

The Court's refusal to apply ERISA standards to allegedly wrongful acts committed before the effective date of the act is further supported by *Martin v. Bankers Trust Co.*, 417 F.Supp. 923 (W.D.Va.1976). In that case, the court dismissed an ERISA suit brought by a plaintiff who had ceased employment and had been denied his pension before the effective date of ERISA:

> "Without question this court could not charge a defendant for breaching a duty under the Act prior to [its effective date] since the defendants cannot be held responsible for what was not the law at the time. By the same logic then, the court will not permit the plaintiff to bring this suit for a cause of action that theoretically arose prior to the time the law existed. This would greatly prejudice the rights of the defendants by permitting them to be subject to a charge of a breach of duties at a time when these duties were not written into the law." 417 F.Supp. at 925.

■ In the absence of clear evidence to the contrary, courts will not give legislation retrospective effect. *See Union Pac. R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 58 L.Ed. 179 (1913). The Court is aware of no such evidence either in the text of ERISA or in its legislative history.

Neither Brice nor Dodson may challenge the break in service rule as a breach of ERISA duties because each of their pensions was denied on that basis before January 1, 1975. The Trust Fund denied Brice's application on November 17, 1971, and Dodson's on June 21, 1972. Similarly, neither man may challenge the method of computing hours earned before their last application prior to January 1, 1975. Although Dodson has not worked since 1967, Brice apparently has earned several quarters of service credit since his earlier pension denial.

■ The applicability of the fiduciary requirements of ERISA is of questionable importance since defendants concede that the Court has jurisdiction over this case under § 302 of the LMRA. It appears that the same "arbitrary and capricious" standard of review governs judicial supervision of trustees, regardless of the origin of their fiduciary duties. As the Court of Appeals for the Ninth Circuit observed in a recent pension fund case:

> "To give meaning to the rights of beneficiaries involved in any fiduciary relationship, the courts have always found it necessary to subject the conduct of the fiduciaries to judicial review and correction. Where, however, the instrument defining the fiduciaries' duties gives them broad discretion, as is generally the case with welfare and pension trusts, the courts limit their review and intervene in the fiduciaries' decisions only where 'they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run.' We find this standard of judicial review, which leads neither to abdication of traditional judicial control of fiduciaries nor to excessive judicial intervention in trust operations, in harmony with federal labor policy. Accordingly, if the *Danti* [*v. Lewis*, 114 U.S. App.D.C. 105, 312 F.2d 345 (1962)] standard is a statement of state law, or general common law, it is a standard we adopt." *Rehmar v. Smith*, 555 F.2d 1362 at 1371 (9 Cir. 1976), *amended*, Jan. 3,

1977 (citations and footnote omitted), *quoting Kosty v. Lewis, supra,* 115 U.S. App.D.C. 343, 319 F.2d at 747.

### B. *Section 502(a)*

█ Section 502(a) of ERISA, 29 U.S.C. § 1132(a) (Supp. IV 1974), provides in pertinent part:

"A civil action may be brought—

"(1) by a participant or beneficiary—

   *    \*    \*    \*    \*    \**

"(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan  *  *  *."

Plaintiffs Dodson and Morgan invoke this section in requesting the Court to review defendants' allegedly erroneous calculation of earned hours of service credit. Since ERISA does not specify an effective date for § 502(a), that section became effective on the date of enactment, September 2, 1974. *See Robertson v. Bradbury,* 132 U.S. 491, 493, 10 S.Ct. 158, 33 L.Ed. 405 (1889); "Memorandum of Secretary of Labor, Amicus Curiae, in Opposition to Defendants' Motions to Dismiss on Jurisdiction Grounds," *Baeten v. Vaness,* 78 BNA BPR (March 22, 1976) at D–1 (E.D.Wis.1976).

The most recent denial of an application from Dodson for pension benefits was June 21, 1972. Although his attorney has corresponded with the Trust Fund since then, Dodson has not filed a new application since 1972. Thus, on its face, the denial of Dodson's application and any miscalculations involved therein took place before September 2, 1974.

Plaintiffs argue that there has been no "clear and continuing repudiation" of Dodson's right to trust benefits because the Trust Fund has accepted new evidence on the issue of Dodson's earned hours and has changed its own calculations. Dodson did not formally appeal the denial of his pension in 1972 and has never filed a new application. Although Dodson's attorneys corresponded with the Trust Fund once in 1972 and three times in 1974 and 1975, they did not challenge the accuracy of the Trust Fund's computation until almost three years after the denial of his application.[8] Nor did Dodson take advantage of Article IX, Section 2(b) of the Trust Fund Rules and Regulations, which establishes procedures for reopening an appeal after the passage of the initial deadline. In other words, the Trust Fund reviewed Dodson's claim even after his time to appeal the original calculations has long passed.

█ Such conduct is in the best interests of pension fund members and should be encouraged. If this Court were to rule that an applicant's cause of action is renewed each time a pension fund informally re-examines his pension request, pension funds would simply refrain from doing so. For the purposes of this case, a pension fund's denial of an application is final when the applicant fails to appeal the decision within any of the time limits set by the fund. Any other conclusion would discourage informal review of pension applications after denial. To the extent that *Kosty v. Lewis, supra,* 115 U.S.App.D.C. 343, 319 F.2d at 750, would require a contrary conclusion, this Court will not follow its precedent. *Kosty*

---

**8.** On August 21, 1972, Dodson's attorney Louis M. Bernstein, asked the Trust Fund to review its denial on the ground that Dodson "should not be subject to 'a break in service' because his failure to work is due to a disability." The Trust Fund replied on August 29, 1972, that Dodson did not file for Disability Grace Periods, and "[e]ven if we could grant the maximum of three consecutive Disability grace periods at this late date, there would be no additional credit granted." On May 6, 1974, Dodson's new attorney, Thomas Schneider, asked the Trust Fund for a copy of its computation of Dodson's pension credits and a pension plan booklet. The Trust Fund responded on May 15, 1974.

It was not until April 11, 1975—almost three years after the denial of Dodson's application—that Schneider wrote the Trust Fund questioning its computation of Dodson's earned hours. On May 21, 1975, the Trust Fund sent information forms for Dodson to fill out, which Schneider returned attached to a letter dated June 17, 1975. On June 26, 1975, the Trust Fund informed Dodson's attorney that Dodson still did not meet the requirement of ten years of earned credit without a break in service.

was decided over a decade before the enactment of ERISA and was undoubtedly influenced to some degree by the almost total lack of statutory safeguards afforded potential beneficiaries of pension funds.

As discussed above, even if Dodson were to file a new application, the Court would consider his claim only as to hours earned after his earlier pension denial. Any other rule would open the door to suits by every person ever denied a pension. A potential beneficiary would need only to file a new application and then go to court claiming that the pension fund erred in calculating his earned hours.

■ Morgan may invoke § 502(a) because the Trust Fund denied his most recent application on October 21, 1975. He may not, however, challenge the accuracy of service hours earned before July 20, 1967, the date of his earlier denial. In any event, as discussed *infra*, Morgan's § 502(a) claim will be dismissed for failure to exhaust internal pension fund remedies.

## II. *STATUTE OF LIMITATIONS*

■ Defendants contend that the claims of Brice and Dodson under §§ 301 and 302 are barred by the statute of limitations. Because neither section contains a specific statute of limitations, the Court must look to the most appropriate period of limitation provided for by California law. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *International U. of Eng. v. Fischbach Moore, Inc.*, 350 F.2d 936, 938–939 (9 Cir. 1965), *cert. denied*, 384 U.S. 904, 86 S.Ct. 1336, 16 L.Ed.2d 358 (1966). The parties have cited no case which specifically addresses the question of what state statute of limitations should govern an action brought under § 302. Plaintiffs argue that the appropriate period is four years as provided for in California Code of Civil Procedure § 337(1) (obligation founded upon a contract or "an instrument in writing") or § 343 (action for which no other statute of limitations is provided). Defendants contend that the three-year limitation for liabilities created by statute should govern. Cal.Code Civ.Proc. § 338(1).

The Court of Appeals for the Ninth Circuit has held that actions under § 303 of the LMRA alleging unfair labor practices are governed by California Code of Civil Procedure § 338(1). *International U. of Eng. v. Fischbach and Moore, Inc., supra*, 350 F.2d at 939. Such actions differ from the instant case, however, because the obligations imposed under § 303 cannot be said to be founded on a written instrument. A right of action exists under § 303 whenever a labor organization injures an individual through an unfair labor practice, regardless of the existence of a contract.

In contrast, the trustees' obligations to members of a pension fund are clearly "founded upon an instrument in writing." In *Rehmar v. Smith, supra*, at 1366 the Court of Appeals for the Ninth Circuit specifically held that "pension benefit eligibility rules * * * qualify as a contract between a labor organization and an employer." The court went on to hold that disputes over the payment of pension benefits are cognizable under § 301 of the LMRA, 29 U.S.C. § 185(a), which establishes a cause of action for "violation of contracts between an employer and a labor organization." At 1366–1367. Thus, the most appropriate statute of limitations under California law would be the one which applies to "an action upon any contract, obligation or liability founded upon an instrument in writing," or four years as provided for in California Code of Civil Procedure § 337(1).

The same reasoning discussed *supra* with regard to accrual of actions under ERISA is applicable to actions for pension benefits under § 302. Thus, Dodson may challenge his pension denial as a violation of § 302 because it occurred on June 21, 1972, exactly four years before this action was filed.

The Trust Fund denied Brice's application for pension benefits on November 17, 1971, because of a break in service. Since the denial was more than four years before this action was filed, his claim is barred by the statute of limitations. Brice filed a new application on June 11, 1974, which was

denied on June 25, 1974. He may challenge any alleged violations of § 302 which resulted from that denial, as long as they do not merely reiterate the reasons for his 1971 denial.

Stone and Morgan may challenge the denials of their pensions to the same extent as under ERISA: Stone may challenge any aspect, and Morgan may challenge the break in service and any other alleged breach that did not accrue at the time of his first pension denial.

## III. *EXHAUSTION OF INTERNAL REMEDIES*

Article VIII, Section 1(a) of the Trust Fund Rules, provides, in pertinent part:

> "An application for a pension shall be made in writing on a form and in the manner prescribed by the Board of Trustees, and shall be filed with the Board at least two months in advance of the first month for which benefits are payable * * *."

Article IX, Section 2 of the Trust Fund Rules, provides procedures to be followed by a person who wishes to challenge a denial of his benefits by the Board. Within 30 days of being notified of a denial of benefits, an individual must petition the Board for review, stating his reasons for disputing the denial. Upon a showing of good cause, the Board must allow the petition to be amended and/or grant a hearing. Failure to file an appeal within 30 days constitutes a waiver of the claimant's right to review, although the Board may relieve the claimant of such a waiver for good cause. A failure to file also will not preclude a claimant from establishing eligibility for benefits at a later date based on additional information that was not available to the claimant at the time of the denial or hearing.

Relying upon the strong policy in favor of allowing pension fund trustees the opportunity to determine an employee's eligibility for benefits, defendants contend that the complaint should be dismissed as to plaintiffs Stone and Morgan because they did not exhaust their internal remedies before filing this action. *See Matthews v. Swift and Company*, 465 F.2d 814, 819–820 (5 Cir. 1972); *Smith v. Union Carbide Corporation*, 350 F.2d 258, 261 (6 Cir. 1965). Plaintiffs respond that Stone complied with Trust Fund application and appeal procedures for all practical purposes and that, while Morgan did not fully pursue his internal remedies, to have done so would have been futile.

Plaintiff Stone first filed a "Request For Pension Credit Information" with the Trust Fund on December 15, 1975.[9] By letter dated January 19, 1976, the Trust Fund requested Stone's employment records from the General Secretary Treasurer of the Laborers Union, explaining that "[a] pension application has been filed [by Stone] with the Laborers Pension Trust Fund * *." The Trust Fund received a reply from the Laborers Union on January 29, 1976, and on February 26, 1976, sent a record of Stone's service credit to Legal Aid informing them that Stone had accumulated 9 years of pension credit which had been cancelled due to a break in service during the 1972 Plan Year.

On March 22, 1976, Stone's attorney, Les A. Hausrath, wrote a letter to the Trust Fund challenging the break in service rule and the method of calculating hours of service credit. David G. Johnson, Administrator of the Trust Fund, sent copies of Hausrath's letter to all Board members and requested comments by the Board's legal counsel and consultant. Johnson also placed "[t]his matter * * * on the agenda for review by the Board at their April 20, 1976 meeting." Letter from David G. Johnson to Board (March 24, 1976). On March 30, 1976, the Trust Fund received a memorandum from their consultant, the Segal Company, which stated:

> "We are in accord with your findings regarding this man's break in service, and we concur in the opinion of counsel."

---

**9.** A second, substantially identical request was filed by Stone on December 18, 1975, apparently with the assistance of the Legal Aid Society of Oakland County ("Legal Aid"). The Trust Fund received a letter from Legal Aid on the same day.

By letter dated April 21, 1976, the Board's counsel, Thomas E. Stanton, Jr., informed Hausrath that Stone's case was "considered by the Board at its last meeting and was referred to us for reply." In the same letter Stanton stated that the "Pension Fund has no record of any application by Mr. Stone for a pension," but went on to request "the legal authorities on which you base your claim that the break-in-service provisions of the Pension Plan are arbitrarily discriminatory," so that he could "review them and advise the Board with regard to their legal effect." Hausrath replied on April 27, 1976, stating that he "was not clear whether [an application] had been submitted," but that he would be "more than happy to submit one to facilitate [Stone's] application for benefits." Hausrath declined to submit a list of legal authorities, but "direct[ed] [Stanton's] attention" to § 302(c)(5) of the Taft-Hartley Act, the Internal Revenue Code, ERISA, and California common law. Stanton referred Hausrath's letter to the Board and, by letter dated April 28, 1976, promised to write Hausrath again after the Board "has had an opportunity to consider it."

By letter dated May 3, 1976, David G. Johnson requested Berton Jacobson of Segal Company to prepare information on Stone's case and informed him that "[t]his matter will be placed on the agenda to again be discussed with the Board at their May 18, 1976 meeting." The Segal Company submitted an evaluation of the effect of the break in service and pension crediting rules of the Pension Plan on May 17, 1976. By letter dated May 25, 1976, Stanton summarized the Segal Company report for Hausrath and informed him:

"The Board considered your correspondence and the comments of its consultant and actuaries at its May meeting and concluded that it could not modify the rules and regulations of the Plan for Mr. Stone's benefit without serious adverse consequences for the participants in the Plan.

"Mr. Stone is free to file an application for a pension and his claims will be given consideration in accordance with the rules and regulations of the Plan as modified to comply with the requirements of ERISA. He should understand, however, that upon the basis of the information furnished to the Fund to date with regard to his prior employment, it would appear that he does not qualify for a pension under those rules and regulations."

This action was filed on June 21, 1976. Counsel for Stone still has not filed a formal application for pension benefits as he promised to do in his letter of April 27, 1976. Defendants urge that this failure mandates the dismissal of Stone's claim. Defendants argue that there are substantial differences between a formal application and the Request for Pension Information which Stone filed:

"The Pension Application is an express written application for a pension, under penalty of perjury, setting forth or containing such things as proof of age, a statement of the type of pension being applied for, a listing of prior union membership, of prior employment history and of disability credits, and a designation of beneficiary. The form is accompanied by a comprehensive instruction sheet. None of these things are covered by the mere request form. The differences are basic and important to the proper administration of the Plan." Reply Brief in Support of Motion to Dismiss or for Summary Judgment, at 4 (filed Nov. 12, 1976).

In view of the strong policy in favor of exhaustion of internal remedies, Stone's counsel used poor judgment in not filing a formal application before bringing this suit. In most instances, such an omission would warrant dismissal. Under the circumstances of this case, however, the Court finds that the functions of a formal application were accomplished for all practical purposes by Stone's request, and that, at this point, to require Stone to go through the application and appeal process would merely cause expense, delay, and futile effort for all parties concerned.

■ The Court reaches this conclusion for a number of reasons. First, and foremost, the Pension Trust Fund clearly treated Stone's request as a formal application. It referred to it as such in its early internal memoranda, and it gave the request as much consideration as it would any application; counsel and the Segal Company thoroughly considered the question and the Board itself reviewed the matter twice. Moreover, the additional information contained in a formal application is of no consequence to the issues presented by Stone's claim. Stone challenges the legality of the break in service rule and the method of computing service credit. The Board has already determined this question in the cases of Stone and others; there is no reason to believe that it will change its position. Where exhaustion of internal remedies would be "wholly futile," courts will not require union members to participate in a charade. *Glover v. St. Louis—S.F.R. Co.*, 393 U.S. 324, 330–331, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). The matter is left to the sound discretion of the court. *Cooke v. Orange Belt Dist. Council of Painters*, 529 F.2d 815, 820 (9 Cir. 1976). This Court also cannot ignore that the defendants will be faced with exactly the same arguments and issues whether Stone is dismissed from the action or not. In view of the unique circumstances of this case, the Court must conclude that Stone's claims should not be dismissed for failure to exhaust internal remedies.

The failure of plaintiff Morgan to exhaust his internal remedies, however, is more troublesome. In addition to challenging the fairness of the break in service and service credit rules, Morgan attacks the accuracy of the Trust Fund's calculation of his hours of service credit.

■ Morgan filed his latest application for pension benefits on September 2, 1975.[10] By letter dated October 21, 1975, the Trust Fund informed Morgan that he was not eligible for benefits. Morgan's attorney, Les A. Hausrath, responded by letter on November 20, 1975, arguing, *inter alia*, that the Trust Fund had erred in computing the service credit earned by Morgan. Hausrath specifically invoked the Trust Fund appeals procedure:

"Pursuant to Article IX, Section 2.b. of the trust fund rules and regulations, please be advised that we are disputing this denial and are hereby petitioning the Board for review of Mr. Morgan's application." Letter from Les A. Hausrath to Board, at 1 (Nov. 20, 1975) ("Hausrath letter").

Hausrath also requested permission to submit Social Security records to help clarify Morgan's employment history. Hausrath letter, *supra*, at 4. By letter dated December 17, 1975, David G. Johnson informed Hausrath that the Board would review "Morgan's appeal" upon receipt of the information from Hausrath. Hausrath responded, "I am in the process of compiling Mr. Morgan's Social Security records and will submit them to your office as soon as I have them." Letter from Les A. Hausrath to David Johnson (Dec. 23, 1975).

Hausrath still has not submitted Morgan's Social Security records to the Board; consequently, the Board has not ruled on the appeal. Plaintiffs' only explanation for this failure is that further proceedings before the Board would be futile. In contrast to a previously decided challenge to Trust Fund Rules, there is no reason to believe that the Board would not correct errors in the computation of Morgan's service credit. The Court will not review the clerical work of a trust fund before a claimant has thoroughly exhausted his internal remedies. There is no excuse for Morgan's counsel not submitting the information that he himself offered to the Board. Thus, Morgan's claim that the Trust Fund has erred in the calculation of his service credit will be dismissed.

---

10. Morgan first applied for pension benefits on May 5, 1967. Morgan and the Trust Fund exchanged a substantial amount of correspondence between 1967 and 1975 concerning Morgan's eligibility for benefits. *See* Affidavit of David G. Johnson, at 6–7 & "Appendix—Morgan File" (filed Aug. 25, 1976).

## IV. *DUTY OF FAIR REPRESENTATION*

Section 302(c) of the LMRA provides that "employees and employers [shall be] equally represented in the administration of" pension funds. Plaintiffs' second claim for relief is that those trustees on the Board who are employee representatives breached their "duty of fair representation." *Cf. Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967) ("Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.").

In *Rehmar v. Smith, supra,* at 1369–1370 & n.6, *as amended,* the Court of Appeals for the Ninth Circuit discussed the applicability of the duty of fair representation to pension fund trustees. Although the court did not explicitly hold that the duty does not bind union trustees, it did "reject the trustees' argument analogizing trust administration to collective bargaining as not supported by authority." At 1370 (footnote omitted). The Court of Appeals for the Fifth Circuit has explicitly held that § 302 imposes no duty of fair representation upon union trustees. *Mumford v. Glover,* 503 F.2d 878, 882 (5 Cir. 1974).

■ The function of pension fund trustees is significantly different from the roles of union and management in ordinary labor affairs such as contract negotiations or grievance matters. The duty of fair representation is imposed upon a union because by law it is the exclusive representative of the bargaining unit. Pension fund trustees, on the other hand, are not advocates; they are fiduciaries. All trustees, labor and management representatives alike, have a duty to take those actions which they believe to be in the best interests of the fund's beneficiaries.

Although the requirement of equal representation among trustees might suggest that a pension fund board is expected to function in an adversarial way, few things could be more inimical to the proper management of a pension fund. A pension fund must not be administered on the assumption that the excesses of labor and management trustees will cancel each other out. To the extent that the present requirements of § 302 encourage this attitude, Congress should consider amending the statute.[11]

The adversary system is designed for factfinding, not administration. Moreover, for the truth to emerge from the crucible of the adversary system, there must be an impartial factfinder—judge or jury. The entire process is administered according to established rules and procedures, and it is governed by a judge who makes appropriate rulings and ensures that no adversary will take unfair or inappropriate advantage over another. While § 302 contemplates the participation of administrators who represent neither the employer nor the employees, these persons are, in practice, mere tie-breakers in the event that the system stalemates. They are neither judges nor factfinders.

■ Sections 401–414 of ERISA, 29 U.S.C. §§ 1101–1114 (Supp. IV 1974), subject pension fund trustees to a comprehensive set of fiduciary duties and establish procedures for enforcing those duties. The responsibilities of pension fund trustees must be evaluated in terms of what they are—fiduciaries rather than advocates or adversaries. It is for this reason that the proper standards of conduct are the fiduciary duties set forth in ERISA and the requirement of § 302(c)(5) that such funds be administered for the "sole and exclusive benefit of the employees." Nothing can be gained by casting trustees in the role of labor negotiators who represent the interests of only one side.

---

**11.** *See* Renfrew, "Fiduciary Responsibilities Under the Pension Reform Act," 32 The Business Lawyer ___ (July 1977).

Accordingly, IT IS HEREBY ORDERED that plaintiffs' claims under §§ 401–413 of ERISA are dismissed with the exception of those claims accruing after January 1, 1975.

IT IS HEREBY FURTHER ORDERED that plaintiffs Morgan and Dodson's claims under § 502(a) of ERISA are dismissed.

IT IS HEREBY FURTHER ORDERED that plaintiffs' claims under § 302 of LMRA are dismissed with the exception of those claims accruing after June 21, 1972.

IT IS HEREBY FURTHER ORDERED that plaintiff Morgan's claim that his credit hours were erroneously calculated is dismissed without prejudice.

IT IS HEREBY FURTHER ORDERED that plaintiffs' claims of a breach of the duty of fair representation are dismissed.