Salvador **MARTIN**, Plaintiff–Appellant,

v.

**CONSTRUCTION LABORER'S PENSION TRUST FOR SOUTHERN CALIFORNIA**, Defendant–Appellee.

No. 88–5927.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1991.

Decided Oct. 28, 1991.

---

Merced Martin, Santa Monica, Cal., for plaintiff-appellant.

Herbert J. Klein, Cox, Castle & Nicholson, Los Angeles, Cal., for defendant-appellee.

Before PREGERSON, HALL and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant Salvador Martin ("Martin") filed this suit for declaratory and injunctive relief against appellee Construction Laborers Pension Trust for Southern California ("CLPT") under sections 301 and 302(c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–187 (1988). The district court granted summary judgment for CLPT on the grounds that the action was filed outside the statute of limitations and Martin has appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## I.

CLPT is an employee pension plan established in 1962 by agreement between the Construction Laborers Union and certain participating employers. The plan was established pursuant to Section 302(c)(5) of the LMRA and amended in 1974 to comply with the Employee Retirement Income Security Act ("ERISA"). The plan provides retirement pensions to employees who are credited with a specified number of years of employment. Credit for years worked, prior to the time the employee is "vested" under the plan, is canceled if the employee sustains a "break in service" as defined in the plan.[1]

In 1961, Martin had accrued service credits under the pension plan for years 1955 through 1961. From 1962 to 1964, Martin worked an insufficient number of hours to obtain credit for service under the plan. In 1979, Martin filed an application with CLPT to determine his pension credits under the plan. The Pension Committee of CLPT informed Martin that credit for years worked prior to 1962 were canceled due to a break in service from 1962 to 1964. Martin was also informed that he may appeal this decision to the Appeals Committee "for a full and fair review."[2] Martin did appeal the denial of service credits and a hearing before the Appeals Committee was held on November 15, 1982.[3] In a letter dated November 16, 1982, the Appeals Committee informed Martin that it had rejected his appeal. No further review of denied applications is contemplated by the pension plan. In 1983, the CLPT again informed Martin that he was not credited with years worked prior to 1963 due to a break in service.[4]

In March, 1987, Martin requested that the Pension Committee reopen his case based on the discovery of new evidence regarding his alleged disability. Martin submitted with the request five medical reports and a summary of Martin's 1961 Worker's Compensation trial. The Pension Committee again denied him credit for years worked prior to 1962 and informed Martin of his right to appeal. Martin appealed the denial and a hearing before the Appeals Committee was held on November 16, 1987. A member of the Appeals Committee stated at the beginning of the hearing:

> I want to make it clear for the Board that[,] ... in the opinion of the Board[,] the statute of limitations has run from the original denial of the application for the pension. However, without waiving that defense, the committee is prepared to present any evidence that may not have been before the committee the first time around and on their own motion review their own action. They are not, however, waiving the defense of the statute of limitations.

Martin's counsel responded to this by stating: "Okay." The Appeals Committee denied the appeal on the grounds that it was "untimely" and a break in service had occurred.

On January 7, 1988, Martin filed a lawsuit in Los Angeles County Superior Court seeking declaratory and injunctive relief under sections 301 and 302(c) of the LMRA. CLPT removed the suit to the United

---

1. A break in service is defined in the plan as the failure "to earn Credited Service during a period of two consecutive calendar years." "Credited Service" is at least 300 hours in covered employment. An employee is excepted from the break in service rule if he is disabled from working for at least 90 days.

2. The pension plan, as required by 29 U.S.C. § 1133, sets forth procedures for review of a denial of claims. The procedure provides for written notice of the denial of a claim and an appeal of the denial of the claim before the CLPT's trustees.

3. Martin was represented at the hearing by counsel and presented several exhibits including declarations of relatives stating that Martin was disabled during the years in question, a certificate of total disability signed by a physician, and documents from government agencies pertaining to Martin's alleged disability.

4. This letter from CLPT is apparently in response to an inquiry from Martin. Martin, however, mentions no such inquiry and provides no other indication that there was any contact between Martin and the Plan between November, 1982 and March, 1987. The district court was apparently not aware of any correspondence in 1983.

States District Court for the Central District of California and filed a motion to dismiss the action on the grounds that it was barred by the statute of limitations or laches. The district court treated the motion as a motion for summary judgment and a hearing was held on March 14, 1988. The motion was granted on March 24, 1988. Martin filed a timely notice of appeal.

## II.

The primary question on appeal is whether a cause of action to enforce rights under a pension plan accrues when a pension plan makes a determination affecting a potential beneficiary's rights under the plan prior to the filing of an application for benefits by the beneficiary. We review a grant of summary judgment de novo. *Narell v. Freeman,* 872 F.2d 907, 909 (9th Cir.1989).

Martin's lawsuit is brought under LMRA sections 301 and 302, 29 U.S.C. §§ 185, 186(c).[5] Such suits are governed by the statute of limitations provided by the law of the forum state. *Waggoner v. Dallaire,* 649 F.2d 1362, 1367 (9th Cir. 1981). "The applicable statute of limitations in California is four years." Cal.Civ. Proc.Code § 337 (West 1982); *see Waggoner,* 649 F.2d at 1367. Although the analogous state statute of limitations establishes the time period within which suit must be brought, federal law determines the time at which the cause of action accrues. *Northern Cal. Retail Clerks Unions v. Jumbo Markets, Inc.,* 906 F.2d 1371, 1372 (9th Cir.1990); *Acri v. Int'l Ass'n of Machinists & Aerospace Workers,* 781 F.2d 1393, 1396 (9th Cir.), *cert. denied,* 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986). A suit to enforce rights under a pension plan accrues, and the statute of limitations begins to run, when there has been a clear and continuing repudiation of rights under the pension plan which is made known to the beneficiary. *Lamontagne v. Pension Plan of the United Wire, Metal & Mach. Pension Fund,* 869 F.2d 153, 157 (2d Cir.), *cert. denied,* 493 U.S. 818, 110 S.Ct. 72, 107 L.Ed.2d 39 (1989); *Fogerty v. Metropolitan Life Ins. Co.,* 850 F.2d 430, 432–33 (8th Cir.1988); *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Kosty v. Lewis,* 319 F.2d 744, 750 (D.C.Cir.1963), *cert. denied,* 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964); *Comstock v. Pfizer Retirement Annuity Plan,* 524 F.Supp. 999, 1002 (D.Mass.1981); *Morgan v. Laborers Pension Trust Fund for N. Cal.,* 433 F.Supp. 518, 523 (N.D.Cal. 1977).[6]

Martin argues that until he actually applies for pension benefits, and his application is denied, his cause of action to determine his rights under the plan has not accrued and the statute of limitations has not begun to run. Martin also argues that CLPT's reconsideration of his claim in 1987 indicates that there had been no clear and continuing repudiation of his claim up until that time. CLPT argues that Martin's cause of action accrued and the statute of limitations began to run when the Appeals Committee rejected his claim in November, 1982, and the 1987 reconsideration does not commence anew the running of the statute of limitations. We agree with CLPT.

---

5. Section 302(c) requires trustees of pension plans to act "for the sole and exclusive benefit of the employees," 29 U.S.C. § 186(c)(5), and "imposes on trustees the burden of fiduciary care, as defined on traditional equitable principles." *Hurn v. Retirement Fund Trust of the Plumbing, Heating and Piping Indus. of S. Cal.,* 703 F.2d 386, 388 (9th Cir.1983).

6. We rely in part on cases arising under ERISA. Martin's cause of action does not, nor could it, allege a violation of ERISA. *See Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1498 (9th Cir.1984) (jurisdiction under ERISA is not available when the action is "based wholly on events occurring before the effective date" of ERISA). Actions brought under ERISA, however, provide guidance in interpreting actions brought under section 301 of the LMRA. *See Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir. 1980) (ERISA actions to enforce benefit rights " 'are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the [LMRA]' " (quoting H.R.Conf.Rep. No. 1280, 93 Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News, 4639, 5038, 5107)).

## A.

Martin relies primarily on *Morgan v. Laborers Pension Trust Fund for Northern California*, 433 F.Supp. 518, 522 n. 5 (N.D.Cal.1977), for the proposition that a cause of action to enforce rights under a pension plan accrues when an application for pension benefits is denied. *See also Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 254 (7th Cir.1983); *Reiherzer v. Shannon*, 581 F.2d 1266, 1272 (7th Cir.1978); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F.Supp. 1404, 1414 (D.Md.1984), *aff'd in part and rev'd in part*, 815 F.2d 975 (4th Cir.1987). Because he has not applied for benefits, but rather a determination of his pension credits under the plan, Martin argues that the statute of limitations has not begun to run on his claim.[7]

In *Morgan*, the court agreed with the parties that the date an application for benefits was denied was the most appropriate date to commence the running of the statute of limitations, when weighed against potential arguments for commencing the statute on the date of the original wrong (*e.g.*, the break in service) or the date a potential pensioner's employment ends. 433 F.Supp. at 522 n. 5. *Morgan*, and the cases holding similarly, each involved suits filed after the denial of an application for pension benefits. They did not involve claims made prior to an application for benefits, such as that made by Martin.[8] These cases are not in conflict with our holding that Martin's cause of action accrues upon a clear and continuing repudiation of his claim, *see, e.g., Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1205–06 (10th Cir.1990), but rather, are an application of that rule to the facts before them. *Morgan* itself suggests that its reasoning should not be limited only to *pension benefits* applications, stating, "the problem of individuals refiling applications to circumvent the statute of limitations can be avoided if courts hold that claims accrue on the date the *application from which they arise* was first denied." 433 F.Supp. at 522 n. 5 (emphasis added). We agree with this reasoning. Because Martin's claims arise from his application for a determination of pension credits, his claims accrued in November, 1982, when his internal remedies were exhausted. To hold otherwise would require all pre-benefits claims against an employee's pension fund to be delayed until a formal application for benefits is filed. Because an application for pension benefits is normally not made until after an employee has retired, the delay, with its negative effects on the availability of witnesses and evidence, is potentially great. "The policy of finality and repose must be satisfied by identifying a date, reasonably ascertainable, which triggers the running of the statute of limitations." *Dameron*, 595 F.Supp. at 1414. In this case, we identify that date as the date Martin's claim was rejected by the Appeals Committee in 1982.

Martin would have us apply one rule in cases in which the employee files a pre-benefit claim and another rule in cases in which she files an application for benefits. Suits would be permitted for the latter claims and not the former. Such a rule could be easily subverted, however, by the plaintiff's choice of application. An employee who is clearly not eligible for pension benefits, but desiring a judicial determination of his status under the plan, could simply apply for pension benefits (rather than, *e.g.*, a determination of credits), the denial of which would give rise to a cause of action. We reject this purely formalistic difference and believe that the interests of both pension funds and employees are served by consistent treatment of all claims

---

7. Acceptance of Martin's argument would require dismissal of his action as premature. If Martin's cause of action has not accrued, then his claim is not yet ripe for review. *See Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1205–06 (10th Cir.1990).

8. In *Morgan*, one plaintiff was permitted to bring suit despite the failure to file a formal application for benefits. 433 F.Supp. at 527–29. Because the pension fund treated his request for pension credit information as a formal application and because any resort to internal remedies would have been futile, the court found that the plaintiff's cause of action had accrued. *Id.* at 529.

against a pension fund, whether based upon an application for benefits or an application for determination of pension credits. In either case there is a formal adjudication of the applicant's rights under the plan.

■ We find further support in *Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888 (1st Cir.1978). In *Cowan*, a pension plan was amended to permit some employees, but not the plaintiff, to obtain greater benefits under the plan. In 1977, the plaintiff applied for, and was denied, the increased benefits. The First Circuit found that the cause of action accrued in 1974 when the plan was amended, and not in 1977 when his pension application was denied. The court distinguished *Morgan* and other cases stating,

> [t]his is not a case in which the application or interpretation of the terms of a pension plan are unclear. In such cases, plaintiff obviously has no cause for complaint until he is refused benefits to which he has some colorable claim, since it cannot be known earlier how the instrument will be interpreted by the trustees.

*Id.* at 895. This distinction is applicable here. The interpretation by the pension fund of the terms of the plan as they apply to Martin was certain in 1982. Martin was accorded a full and fair hearing in accordance with the internal remedies provided under the plan. The Appeals Committee made an unequivocal determination that Martin would be denied credit for the years prior to 1962. We thus find that the exhaustion of his internal remedies and the denial of his claim in November, 1982, constitute a clear repudiation of his claim, commencing the statute of limitations. Because his suit was not brought within four years of the 1982 denial, the suit was properly dismissed by the district court.

#### B.

Martin also argues that there was no continuing repudiation of his claim because CLPT reopened his case in 1987. Martin

relies primarily on *Kosty v. Lewis*, 319 F.2d 744 (D.C.Cir.1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964). In *Kosty*, the defendant pension trust initially denied the plaintiff's pension application in 1953. The court found that "[t]he administrative file, which was introduced into evidence by the Trustees themselves, is replete with documentary evidence showing that the case was still not closed in 1960, when this action was commenced." *Id.* at 750. Until then, "the Trustees were giving continuing consideration to appellant's eligibility." *Id.*

■ Unlike *Kosty*, the present case is not "replete with evidence" that CLPT had not closed the case. Indeed, the record is quite clear that the 1982 decision of the Appeals Committee was final and unequivocal. The internal remedies provided by the plan were exhausted. There was virtually no contact between Martin and CLPT between the 1982 Appeals Committee decision and the request by Martin to reopen the case more than four years later.[9] CLPT expressly stated that by holding a new hearing in 1987 it was not waiving the statute of limitations defense against a claim by Martin. We can find no basis for holding that CLPT had kept Martin's case open once the Appeals Committee's November, 1982 decision was made. To so hold would only penalize CLPT for giving Martin further additional consideration of his case. *See Mason v. Aetna Life Ins. Co.*, 901 F.2d 662, 664 (8th Cir.1990) ("informal reexamination is to be encouraged and will not renew a claimant's cause of action for statute of limitations"); *Dameron*, 595 F.Supp. at 1414 ("a tenacious plaintiff should not be allowed to renew stale claims merely by requesting reconsideration of 'final' decisions"); *Morgan*, 433 F.Supp. at 525 (reopening cases "is in the best interests of pension fund members and should be encouraged. If ... an applicant's cause of action is renewed each time a pension fund informally re-examines his pension request, pension funds would simply refrain

---

**9.** *Cf. Valle v. Joint Plumbing Indus. Bd.*, 623 F.2d 196, 202 n. 10 (2d Cir.1980) (letter stating pension fund would review plaintiff's application two years after repudiation of right to benefits either tolled or began anew the running of the statute of limitations).

from doing so."). On the undisputed facts before us, we conclude that the 1987 hearing did not alter the Appeals Committee's 1982 repudiation of Martin's claim.[10]

### III.

Martin's cause of action under LMRA sections 301 and 302(c) for declaratory and injunctive relief, arising from CLPT's finding that he was denied credit for years worked prior to 1962, accrued when the Appeals Committee denied his claim in 1982. The undisputed facts show that the Appeals Committee's decision was a clear repudiation of Martin's claim that the Pension Committee's finding was erroneous. The reopening of Martin's case in 1987 on the same claim did not constitute a new cause of action or commence anew the statute of limitations on his claim. Because Martin did not file suit within four years from the date of the Appeals Committee's 1982 denial, the suit is barred.

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I do not believe that the four-year limitations period began to run when Martin inquired about his pension credits and the Construction Laborers Pension Trust (the "Trust") denied his appeal. Moreover, even if I agreed with the majority's view of the applicable limitations period, I would hold that equitable considerations preclude the Trust from relying on it in this case. Therefore, I must respectfully dissent.

### I

The majority acknowledges that the California statute of limitations applicable to actions on written instruments should apply in this case. It asserts, however, that when the cause of action arises is a question of federal law. Without disputing that

general point, I would resolve that question of law by reference to ordinary principles of contract law. Under these principles, I believe that Martin is entitled to pursue his claims for both declaratory and injunctive relief.

### A

The majority opinion overlooks the distinction between an action for coercive relief and an action for a declaratory judgment. Because the four-year statute of limitations has not begun to run on Martin's claim for declaratory relief, I would reverse the district court's judgment insofar as it precluded Martin from proceeding with his action for a declaratory judgment.

The Trust has a contractual obligation to pay pension benefits upon Martin's retirement. If the Trust fails to perform at the time set for that performance, which is the time of Martin's retirement, Martin may sue for breach of contract. In such a suit for breach of contract, Martin traditionally would be entitled to ask a court for a coercive remedy, such as damages or an injunction. *See* Wright, Law of Federal Courts 670–71 (4th ed. 1983). Martin's right to sue for breach of contract is not defeated by the Trust's announcement, years in advance of the date set for its performance, that it did not intend to perform, or that it did not intend to perform to the degree that Martin believes the contract requires.

The issue in this case is whether Martin can ask a court to adjudicate his rights under the contract before the time set for the Trust's performance. There is an actual controversy about the rights and obligations of the parties. In such a case, even if the dispute has not yet reached the stage where Martin is entitled to seek a coercive remedy, an action for a declaratory judgment is appropriate. *See id.* at 671.

---

**10.** Martin also argues that CLPT should be estopped from relying on the statute of limitations. This theory was not raised below and we decline to address it on appeal. *In re Wind Power Systems Inc.*, 841 F.2d 288, 290 n. 1 (9th Cir.1988). Although arguments raised for the first time on appeal may be considered if the issue is one of pure law and does not depend on

a fully developed factual record, *id.*, this exception does not apply here.

Martin also asks us to address the merits of his claim. The district court properly addressed only the statute of limitations question and did not reach the merits. Because we agree with the decision below on the statute of limitations issue, we also do not reach the merits.

The four-year statute of limitations does not bar the action for declaratory relief. Martin's ability to file an action for a declaratory judgment begins when there is a real controversy about the rights and obligations of the parties and does not end until the statute of limitations forecloses his right to sue for coercive relief. *See United Pacific/Reliance Insurance Co. v. DiDomenico*, 173 Cal.App.3d 673, 676, 219 Cal.Rptr. 119, 120–21 (1985). In this case, the statute of limitations does not begin to run on Martin's right to sue for coercive relief until the breach of contract occurs. *See id.* 219 Cal.Rptr. at 121. That breach could not occur until the Trust's performance becomes due, after Martin's retirement. The four-year statute of limitations, therefore, has not yet begun to run. It will not begin to run until sometime after Martin retires, applies for a pension, and the Trust pays out less than Martin believes is required. Thus, even if Martin does not yet have a cause of action for breach of contract, he is entitled to ask a court for a declaratory judgment. *See id.* 219 Cal. Rptr. at 120–21.

### B

In addition to requesting declaratory relief, Martin asked for an injunction. To establish his case for injunctive relief in a contract action, Martin would ordinarily have to show that the Trust had breached its duty to perform. Martin does not allege that the Trust has breached its duty to perform, however, because the occasion for that performance, Martin's retirement and application for pension benefits, has not yet occurred.

Although the time for the Trust's performance has not yet arrived, Martin could sue for breach of contract by relying on the doctrine of breach by anticipatory repudiation. Under this doctrine, Martin could regard the Trust's position on his pre–1962 credits as an announcement that the Trust did not intend to perform fully the contractual duties that Martin believed it was obligated to perform. Martin could thus treat the Trust's position as a repudiation of its duties under the contract. Instead of waiting to sue until the time that the Trust's performance became due, Martin could treat this anticipatory repudiation as a breach and ask the court to impose a coercive remedy. Thus Martin could sue for breach of contract even before the date that the Trust's performance became due.

But although Martin may elect to treat a repudiation as a final breach, he is also entitled to await the repudiating party's performance. *See NAPA Association of Public Employees v. County of NAPA*, 98 Cal.App.3d 263, 159 Cal.Rptr. 522, 526 n. 5 (1979); *Brewer v. Simpson*, 53 Cal.2d 567, 593, 2 Cal.Rptr. 609, 622–23, 349 P.2d 289, 302–03 (1960). Thus, the fact that Martin was entitled to file suit after the Trust's repudiation does not mean that Martin was required to file such a suit or suffer the running of the statute of limitations.

Ordinarily, the statute of limitations does not begin to run until the allegedly breaching party fails to perform a contractual duty. The question in this case is whether the statute of limitations begins to run when one party announces, in advance of its obligation to perform, that it does not intend to perform as expected. The answer to that question is no. Under the doctrine of anticipatory repudiation, Martin had the choice to treat the repudiation as a final breach or to await the date for performance before regarding the contract as broken. *See Brewer v. Simpson*, 53 Cal.2d 567, 2 Cal.Rptr. 609, 622–23, 349 P.2d 289, 302–03 (1960), citing 4 Corbin, Contracts § 989 (1951). Applying the statute of limitations to bar Martin's suit in this case would deprive him of that choice. "Defendant cannot accelerate the period of limitations by declaring in advance that she will not perform when the time comes." *Oeth v. Mason*, 247 Cal.App.2d 805, 56 Cal.Rptr. 69, 74 (Cal.App.1967). As the court noted in *Oeth:*

> The law is settled that when a contract is repudiated before the time fixed for performance, the promisee may, but need not, regard the anticipatory repudiation as a final breach. If she does not so elect, she may properly wait until the

time performance is due before regarding the contract as broken.

*Id.*

In this case, Martin was not obligated to regard the Trust's 1982 repudiation as a final breach. Thus, the statute of limitations did not begin to run, and Martin was entitled to attempt to persuade the Trust to perform as he believed the contract required. When the Trust decided once again in 1987 that it was not persuaded by Martin's efforts, then Martin was entitled to regard that 1987 decision as a breach by anticipatory repudiation. He was therefore entitled to bring this coercive action asking for specific performance of the Trust's contractual duties. Because the final breach by repudiation occurred in 1987, Martin's filing easily complies with the four-year statute of limitations. Therefore, I would reverse the district court's judgment insofar as it held that the statute of limitations barred Martin's action for injunctive relief.

## II

Even if the majority were correct in holding that Martin's suit was not filed within the applicable four-year limitations period, I would hold that equitable considerations preclude the Trust from relying on the protection of the limitations period in this case. Statutes of limitations can be equitably modified under either of the somewhat-related doctrines of equitable tolling and equitable estoppel. *See Stallcop v. Kaiser Foundation Hospitals,* 820 F.2d 1044, 1050 (9th Cir.1987). The principle of equitable tolling can apply if Martin was "excusably ignorant" of the limitations period. *Id.* The doctrine of equitable estoppel focuses on the actions of the defendant. *See Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981).

If the majority's view of the statute of limitations is correct, then employees like Martin prompt the running of the limitations period simply by inquiring about their pension credits. Under the majority's view, employees who make no inquiry preserve their right to challenge the Trust's calculations for four years after retirement, when the time for performance is due. But employees who inquire about

their credits prompt the statute of limitations to begin running against them long before they retire. Under these circumstances, I believe that the Trust had a fiduciary duty, when it denied Martin's appeal in 1982, to advise Martin that he had four years to challenge the denial in court and that the Trust intended to rely on the protection of that limitations period. The Trust offered Martin no such advice. I would hold that this breach of fiduciary duty estops the Trust from relying on the statute of limitations. *Cf. Stallcop,* 820 F.2d at 1050 (because defendant had no duty to notify plaintiff of limitations period, plaintiff had no right to equitable modification of limitations period).

Alternatively, I would hold that this breach of fiduciary duty tolled the running of the limitations period until Martin learned of the limitations period or learned of the Trust's intention to rely on a four-year period. Ordinarily, a plaintiff who was represented by counsel is not "excusably ignorant" of a limitations period. Courts reason that a represented plaintiff has the means to learn her rights and can be charged with constructive knowledge of the law. *Id.* Although Martin was represented by counsel in this case, I do not believe he can be charged with constructive knowledge of the limitations period. The court decides today for the first time that the four-year limitations period can be triggered long before a pension fund's performance is due, by an employee's mere inquiry about pension credits. I do not believe that Martin should be charged with constructive knowledge of a legal development that had not yet occurred. This would be a different case had the Trust informed Martin in 1982 of its theory that a four-year limitations period was applicable and that the Trust intended to rely on the protection of that limitations period.

Because I would reverse the judgment of the district court, I respectfully dissent.