# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNETH CHUCK,
                    *Plaintiff-Appellant,*

            v.

HEWLETT PACKARD CO., a foreign
corporation; THE HEWLETT
PACKARD COMPANY DEFERRED
PROFIT SHARING RETIREMENT PLAN;
JOHN CORCORAN, in his capacity as
the Plan Administrator; JANE AND
JOHN DOES, 1-10, in their capacity
as Plan Administrators and/or
Trustees,
                    *Defendants-Appellees.*

No. 04-36094

D.C. No.
CV-03-01685-AJB

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
December 6, 2005—Portland, Oregon

Filed July 25, 2006

Before: Dorothy W. Nelson and Diarmuid F. O'Scannlain,
Circuit Judges, and Larry A. Burns,* District Judge.

Opinion by Judge D.W. Nelson

---

*The Honorable Larry A. Burns, United States District Judge for the
Southern District of California, sitting by designation.

8293

## COUNSEL

Karl G. Anuta and David S. Foster, of Sokol & Anuta, Portland, Oregon, for the plaintiff-appellant.

Joseph P. Busch, III, of Gibson, Dunn & Crutcher, Irvine, California; and Richard F. Liebman and Allyson Krueger, of Barran Liebman, Portland, Oregon, for the defendants-appellees.

**OPINION**

D.W. NELSON, Senior Circuit Judge:

Kenneth Chuck appeals the district court's grant of the summary judgment motion put forward by several Hewlett Packard Company defendants (collectively, "HP"). Chuck's principal claim is that the Hewlett Packard Company Deferred Profit-Sharing Retirement Plan (the "Plan"), which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, owes him additional retirement benefits arising from his employment at HP until 1980. He also seeks relief for the Plan's alleged breach of its fiduciary duties and for its failure to provide him with Plan-related documents as required by 29 U.S.C. §§ 1021-1024.

At the heart of this case, we are faced with an issue of first impression in this circuit: whether ERISA's statute of limitations may bar a claim for benefits notwithstanding a plan's failure to fulfill its disclosure and review obligations under ERISA § 503, 29 U.S.C. § 1133. We hold that a plan's material violation of § 1133 is a factor that militates strongly against a finding that the statute of limitations has begun to run against a claimant, but that a compelling showing of circumstances in this case nevertheless indicates that Chuck's benefits claim is time-barred. Furthermore, because Chuck's benefits claim is time-barred on account of his own actions, we hold that Chuck lacks statutory standing to bring his claims under ERISA.

**I**

Chuck worked for HP from 1968 to 1972, and then again from 1974 to 1980. In 1978 and 1979, HP appears to have calculated Chuck's pension credit and provided him with annual benefit statements as though there had been no break in his service with HP. Shortly before Chuck's resignation from HP

in December 1980, however, HP recalculated Chuck's accrual of pension benefits in light of the gap in his employment with HP. The result was a significant decrease in the benefits that had vested to Chuck under the Plan. Chuck promptly brought to HP's attention his dispute with the benefits recalculation. According to Chuck, he was entitled to the original, higher benefits calculation as a condition of his agreement to return to HP in 1974.

In late December 1980, soon after Chuck's resignation, HP sent Chuck a "Retirement Benefit Claim Form" with instructions regarding the election of a method for pension benefit payment. The option to receive a lump sum payment had been pre-selected for Chuck, and every other option had been crossed out. The form also noted that "[o]nce a lump sum benefit payment has been elected or approval for lump sum payment obtained, the choice is irrevocable." Chuck never returned the form, because, as Chuck alleges, instructions on the form signaled that an annuity commencing at age 65 would be the default method of payment to Chuck if no timely election were made. Chuck then wrote a letter to an HP administrator asking that the amount of his vesting as announced on that form be corrected to reflect his original hire date with HP in 1968.

A Plan administrator sent a letter to Chuck dated January 28, 1981, in which she re-affirmed the decrease in Chuck's vested benefits and explained that the change was "due to the fact that from September, 1972 to August, 1974 you were not an HP employee." This letter also declared that "corrected" trust statements for 1978 and 1979 were attached and that Chuck would be receiving shortly his "final trust statement for the October 31, 1980 quarter." Chuck admits that he was aware at this time that HP was going to take the position that he was not eligible for any further pension benefits. Soon afterward, Chuck received a lump sum payment of $3,269.06, which in HP's view constituted a full and complete distribution of Chuck's benefits under the plan.

In late 1991 and early 1992, Chuck sent a series of letters to HP seeking clarification of the benefits he could anticipate receiving when he retired. HP replied in a letter dated March 6, 1992, noting that Chuck had been paid the $3,269.06 in 1981 and that "[n]o further retirement benefits are payable from our U.S. plans." For the next several years, and then again starting in early 2001, Chuck sent numerous letters to HP seeking to reestablish his entitlement to a benefits calculation based on continuous service with HP. Some of these letters also requested basic Plan documentation, which HP had never given Chuck. HP did not respond to many of these letters and did not provide Chuck with the Plan documentation.

Chuck filed his complaint in the district court on December 5, 2003. HP moved for summary judgment, and the district court granted the motion. The district court held that ERISA's statute of limitations bars Chuck's benefits claim and related fiduciary duty claims, and that consequently he lacked standing under ERISA to bring his claims for plan documents and information.

## II

Our jurisdiction arises under 28 U.S.C. § 1291, and we review the district court's grant of summary judgment *de novo. Wetzel v. Lou Ehlers Cadillac*, 222 F.3d 643, 646 (9th Cir. 2000) (en banc). Because this is a review of a grant of summary judgment, we view the evidence "in the light most favorable to the nonmoving party . . . [and] determine[ ] whether there are any issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (quoting *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir. 1999)). The district court's interpretation of ERISA also receives *de novo* review. *Id.*

## III

### A

We first address Chuck's claim that HP has wrongfully denied him benefits to which he is entitled. HP argues that this claim is time-barred because it was filed after the expiration of ERISA's statute of limitations. Chuck contends that his cause of action never accrued, and therefore that the statute of limitations never began to run, because HP failed to provide him with adequate information regarding either his benefits denial or his rights to an internal review of that denial. We hold that a plan's violation of its notification and review obligations under ERISA is a highly significant factor, but not a dispositive one, in determining whether a claim has accrued for benefits under ERISA. In this case, an unusual combination of circumstances indicates that Chuck's claim is time-barred notwithstanding HP's failure to provide proper notification and review.

**[1]** Chuck brings his benefits claim under 29 U.S.C. § 1132(a)(1)(B), which creates a cause of action for a benefit plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Because there is "no specific federal statute of limitations governing claims for benefits under an ERISA plan," we "look to the most analogous state statute of limitations" to determine the length of the limitations period. *Wetzel*, 222 F.3d at 646. In this case, which arose in Oregon, there is no dispute that the most analogous state statute is Oregon's six-year statute of limitations for breach of contract claims. *See* Or. Rev. Stat. § 12.080(1). Once his cause of action accrued, Chuck therefore had six years to bring his suit in federal court.

**[2]** Federal law, however, governs the issue of when a cause of action accrues and thereby triggers the start of the

limitations period. *Wetzel*, 222 F.3d at 646. We have earlier established that "an ERISA cause of action accrues either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied." *Id.* at 649 (citations omitted). A participant need not file a formal application for benefits before having "reason to know" that his claim has been finally denied. *See Martin v. Construction Laborer's Pension Trust*, 947 F.2d 1381, 1384-85 (9th Cir. 1991). Instead, a cause of action accrues when a pension plan communicates "a clear and continuing repudiation" of a claimant's rights under a plan, *id.* at 1385, such that the claimant could not have reasonably believed but that his benefits had been "finally denied." *Wetzel*, 222 F.3d at 650.

**[3]** The central issue in this case, then, is whether Chuck had reason to know of such a denial more than six years before he filed suit in 2003.

### B

Chuck argues that there could not have been a clear and continuing repudiation of his claim for further benefits if the Plan failed to provide Chuck with proper notice of that denial or with an opportunity to exhaust the Plan's internal review procedures. *Cf. Martin*, 947 F.3d at 950 (relying on both the denial of a claim and the exhaustion of internal remedies to find a clear and continuing denial). We agree that the record demonstrates that the Plan violated its ERISA obligations to provide Chuck with adequate justification for its denial of benefits and with a reasonable opportunity for review. We do not agree, however, that these failures necessarily mean that Chuck lacked reason to know that the denial of his benefits claim was final.

**[4]** As a preliminary matter, we hold that the Plan clearly breached its duties of notification and review under ERISA. Under 29 U.S.C. § 1133, all plans must "provide adequate notice in writing to any participant or beneficiary whose claim

for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." § 1133(1). Plans must also "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." § 1133(2). By the time Chuck resigned from HP, the Department of Labor had promulgated regulations requiring, more specifically, that plan administrators provide claimants with:

    (1)  The specific reason or reasons for the denial;

    (2)  Specific reference to pertinent plan provisions on which the denial is based;

    (3)  A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

    (4)  Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503-1(f) (1980).[1]

[5] Although we have held that substantial compliance with these requirements is sufficient, *see Brogan v. Holland*, 105 F.3d 158, 165 (9th Cir. 1997), here we find it plain that HP came nowhere close to complying. The only evidence that HP

---

[1]The Department of Labor has more recently amended these requirements. *See* 65 Fed. Reg. 70265 (Nov. 21, 2000); 66 Fed. Reg. 35887 (July 9, 2001). Most notably, subsection (4) now requires plan administrators to inform claimants specifically of their right to bring civil actions under 29 U.S.C. § 1332(a). *See* 29 C.F.R. § 2560.503-1(g)(1)(iv) (2006). These amendments do not apply to benefits claims, like Chuck's, that arose before January 1, 2002, *see* 29 C.F.R. § 2560.503-1(o) (2006).

met any of these obligations is its letter dated January 28, 1981, which informed Chuck that his "vested interest has been changed due to the fact that from September, 1972 to August, 1974 [Chuck was] not an HP employee." This statement complies with the requirement that the Plan communicate the specific reason for the denial, but it clearly does not meet the plan's other obligations under either 29 U.S.C. § 1133 or 29 C.F.R. § 2560.503-1(f).

**[6]** Accepting that the Plan clearly fell short of these obligations, we must now inquire into the effect of such a breach on the application of a time bar. In an earlier case, we have decided that a plan's noncompliance with these obligations prevented a limitations period from beginning to run. *See White v. Jacobs Engineering Group Long Term Disability Benefit Plan*, 896 F.2d 344, 350-52 (9th Cir. 1990). There, however, we addressed only whether the plan's inadequate notice could prevent the start of a *contractual* limitations period—that is, a limitations period defined in the benefit plan itself. *See id.* at 350 ("When a benefits termination notice fails to explain the proper steps for appeal, *the plan's* time bar is not triggered") (emphasis added). It is a distinct issue, and one we have not previously addressed, whether such a failure also prevents the triggering of *ERISA's* statute of limitations. *See also Mogck v. Unum Life Ins. Co.*, 292 F.3d 1025 (9th Cir. 2002) (holding a plan's notice insufficient on grounds other than § 1133, but discussing statutory and contractual limitations periods separately).

Although many considerations remain constant across both contexts, we are persuaded of three slight but relevant distinctions between statutory and contractual time bars in the ERISA context. Because of these distinctions, we hold that a plan's violation of § 1133 does not always prevent the triggering of ERISA's statutory limitations period.

First, as we have discussed above, the trigger for ERISA's statute of limitations on a claim for benefits (unlike the trigger

for the contractual limitations period in a given plan) is well-established by federal law, requiring in cases such as this one simply that we examine whether a claimant "could have reasonably believed his benefits had not been finally denied," or whether instead he had "reason to know" of a "clear and continuing repudiation" of his claim. *Wetzel*, 222 F.3d 649-50; *Martin*, 947 F.2d at 1385.

A plan's failure to comply with its disclosure and review obligations under § 1133 is highly relevant to this inquiry, to be sure. It is indisputable that the clarity and apparent finality of a benefits denial are easily affected by whether the plan discloses its justifications for the denial and by whether there has been a reasonable opportunity for full and fair review of that denial. In this vein, for example, it is clear that the statute of limitations does not begin to run if a plan's disclosure was so inadequate that a claimant did not even have reason to know about the denial. *See Price v. Provident Life and Acc. Ins. Co.*, 2 F.3d 986, 988 (9th Cir. 1993). Even where a claimant does have reason to believe that benefits might have been denied, a plan's compliance with § 1133 serves crucial information-providing and signaling functions that lend certainty to a claimant's understanding whether a given denial is final or appealable. A plan's failure to comply with § 1133, conversely, deprives claimants of a congressionally mandated means of knowing the proper import of, and response to, a benefits denial. Even in cases in which a denial might otherwise seem final, a plan's failure to comply with § 1133 could deprive a claimant of "reason to know" that the denial was final.

Nevertheless, in unusual circumstances, a claimant may well have reason for such knowledge notwithstanding a plan's violation of its notification and review obligations under § 1133. In particular, a claimant's own actions or knowledge might serve to obviate the need for § 1133 information. A claimant with actual knowledge of his internal appeal rights under a plan, for example, could not contend that a benefits

denial was non-final simply because the plan did not remind him of those rights. *Cf. Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) (noting that "a plaintiff with actual knowledge of the right to bring a judicial action challenging the denial of her benefits may not rely on equitable tolling notwithstanding inadequate notice from her pension plan"); *I.V. Servs. of America, Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51 (1st Cir. 1999) (refusing to equitably toll a contractual limitations period and finding "critical" the fact that the claimants had had actual knowledge of the accrual of their cause of action). Although this class of cases may not be vast, its existence counsels us that a plan's § 1133 violation cannot create a *per se* bar against application of ERISA's statute of limitations.

A second relevant distinction between the enforcement of contractual and statutory limitations periods relates to the policies underlying those limitations periods. With regard to a contractual limitations period, we have determined that "holding that inadequate notice does not trigger a . . . time bar will not create a significant problem of stale claims," for plan administrators would have just as much capacity and incentive "to avoid the contingent liability of stale claims by ceasing to rely on benefit termination form letters and giving adequate, specific notice." *White*, 896 F.2d at 352. To a large extent, this reasoning is applicable in the statutory context as well, for plans have the identical capacity and incentives to avoid stale claims. But it is also apparent that the ongoing passage of time elevates both the burden imposed by a stale claim and the difficulty of resolving it. This effect is why, despite ERISA's goal of providing ready access to courts, and despite the absence of any express statute of limitations for benefits claims under ERISA, the federal courts have long applied a statute of limitations to such claims as a matter of federal common law. *See, e.g., Martin*, 947 F.2d at 1384; *see also Flanagan v. Inland Empire Elec. Workers Pension Plan & Trust*, 3 F.3d 1246, 1252 n.4 (9th Cir. 1993) (collecting cases). We have found that the "policy of finality and repose"

has particular traction against allowing ERISA claims after potentially extreme delays, given their increased "negative effects on the availability of witnesses and evidence." *Martin*, 947 F.2d at 1385 (citation omitted).

Thus, there is at least some difference between allowing a claim to be filed several years after the expiration of a plan's time bar but before the expiration of ERISA's statute of limitations (at least in cases in which ERISA's limitations period ends later), and allowing a claim to be filed in perpetuity. While plan administrators have the capacity and the incentive to avoid stale claims of either sort, perpetual liability opens a door more widely to claims whose underlying events have long passed, elevating concerns regarding the plan's abilities to anticipate its financial obligations adequately. *Cf. Veltri*, 393 F.3d at 325 ("We share the . . . concern that to allow tolling of the statute of limitations 'in perpetuity,' would thwart actuarial prediction of plan liability and thereby threaten the ability of pension plans to prepare in advance to meet financial obligations simultaneously to both beneficiaries and adverse litigants.") Most significant, such concerns are particularly elevated once a claimant has clear reason to know that a denial of benefits is final, for at that point there is diminished justification for indefinitely allowing the claimant to sit on the matter rather than bring his suit in federal court.

A third reason to differentiate statutory and contractual limitations periods involves claimants' access to meaningful remedies. Clearly, ensuring the availability of both administrative and judicial remedies is a central purpose of the ERISA regime. We have previously noted that adequacy of notice is "important to [claimants'] ability to obtain full and fair reviews of their claims," and the statute and regulations "reveal a purpose to aid claimants in avoiding the obstacles a plan may place in their paths to the appeals board." *White*, 896 F.2d at 351. ERISA likewise reveals a purpose of removing obstacles in claimants' paths to the courts. Indeed, Congress expressly declared that a central policy goal in creating

ERISA was to protect participants' interests "by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto . . . and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). In keeping with Congress' goal of providing "ready access to the Federal courts," we must remain mindful that "ERISA is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans." *Batchelor v. Oak Hill Med. Group*, 870 F.2d 1446, 1449 (9th Cir. 1989); *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983) (determining that ERISA is "designed to promote the interests of employees and their beneficiaries in employee benefit plans").

One of the most significant remedial concerns regarding the enforcement of contractual limitations periods, however, is somewhat mitigated in the context of enforcing ERISA's statute of limitations. If, despite a plan's insufficient notification to the claimant, ERISA's limitations period is enforced— unlike the enforcement of contractual limitations periods— plan boards still would not be entirely capable of "deter[ring] claimants from timely appealing by sending vague and inadequate appeal notices." *White*, 896 F.2d at 351; *cf. Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 726 (9th Cir. 2000) (noting that missing the deadline for invoking a plan's administrative procedures would "entirely foreclose[ ]" judicial review). After all, a claimant could still potentially seek a remedy in federal district court by filing a timely claim under 29 U.S.C. § 1132(a)(3) to enforce the notification and review requirements of § 1133—a claim for which the exhaustion of internal dispute procedures would not be required. *See Graphic Communications Union, Dist. Council No. 2, AFL-CIO v. GCIU-Employer Retirement Ben. Plan*, 917 F.2d 1184, 1187 (9th Cir. 1990) ("[E]xhaustion of internal dispute procedures is not required where the issue is whether a violation of the terms or provisions of the [ERISA] statute has occurred.") (quotation marks and citations omit-

ted); *Chappel*, 232 F.3d at 724 ("[A]n ERISA plaintiff whose claim is governed by the contractual terms of the benefits plan, *rather than by the statutory provisions of ERISA itself*, must first exhaust the administrative dispute-resolution mechanisms of the benefit plan's claims procedure.") (emphasis added). Such a suit would remove "the obstacles a plan may place in [claimants'] paths to the appeals board," *White*, 896 F.2d at 351, for the usual remedy for a violation of § 1133 is "to remand to the plan administrator so the claimant gets the benefit of a full and fair review." *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000); *see also McKenzie v. General Telephone Co. of California*, 41 F.3d 1310, 1315 (9th Cir. 1994) (noting that the ordinary relief is not substantive for "a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements") (quoting *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir. 1984)).

Granted, the availability of federal courts to hear such suits provides only a very limited safety valve for claimants. After all, these suits effectively require claimants to learn independently of their internal appeal rights, when Congress and the Department of Labor have, to the contrary, explicitly placed the burden on plans of informing claimants of those rights. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. Nevertheless, it is a safety valve that is most likely to be meaningful for the occasional claimant who had no basis other than the ERISA statute itself for learning of his internal appeal rights but who had received unmistakable notification from a plan that its decision was final.[2]

**[7]** We recognize that, as between the enforcement of contractual and statutory time bars, these distinctions are not

---

[2]We do not address whether we would reach the same conclusion under the Department of Labor's current regulations, which require plan administrators to inform claimants not only of their internal appeal rights but also of their right to bring civil actions under 29 U.S.C. § 1332(a). *See* 29 C.F.R. § 2560.503-1(g)(1)(iv) (2006); *supra*, note 1.

great. Nevertheless, we find it significant that they are all relatively salient in the case of a claimant who, despite the § 1133 violation, still has clear reason to know that the plan's denial of benefits is final. We are therefore persuaded that a plan's noncompliance with § 1133 does not prevent *per se* the triggering of ERISA's statute of limitations. Instead, we hold that, while a great deal of caution is necessary before finding a claim barred by ERISA's statute of limitations notwithstanding a plan's violation of § 1133, an investigation of the facts of each case is necessary to determine whether a plan nevertheless foreclosed a claimant from any reasonable belief that the plan had not finally denied benefits.[3]

---

[3]We do not believe this interpretation of ERISA differs materially from the law in our sister circuits. The Third Circuit has asserted in a similar situation that "[w]here a termination letter does not comply with the statutory and regulatory requirements, the [statutory] time limits for bringing an administrative appeal are not enforced against the claimant." *Syed*, 214 F.3d at 162. That case, however, found that the plan had "fully complied with the statutory and regulatory requirements for notice" under § 1133, and its statement regarding non-enforcement of the time bar was offered with neither discussion of the distinction between contractual and statutory time limits nor support from any authority other than one case involving a contractual time bar. *See id.* (citing *Epright v. Environmental Resources Management, Inc. Health and Welfare Plan*, 81 F.3d 335, 342 (3d Cir. 1996)). We therefore read as dictum its brief statement of the legal consequences had the plan not complied with the relevant ERISA obligations. *See Drelles v. Metropolitan Life Ins. Co.*, 357 F.3d 344 347-48 (3d Cir. 2003) ("As defined by this Court, dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding.") (internal quotation marks and citation omitted).

The Second Circuit has allowed a tardy claim in circumstances similar to those presented here, but it did so by relying on equitable tolling grounds, thus avoiding a decision whether a cause of action had ever accrued in the first place. *See Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 322-26 (2d Cir. 2004). Here, we find that under Ninth Circuit law a cause of action can accrue, in some circumstances, despite a plan's failure to comply with its obligations under § 1133, and that ERISA's limitations period can therefore begin to run. We do not reach the question of equitable tolling, for Chuck has waived it both by failing to raise it before the district court and by failing to raise it adequately in his opening brief before this court. *See Martin*, 947 F.2d at 1387 n.10; *Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985).

C

**[8]** The facts of this case convince us that, despite the Plan's failure to notify Chuck of his appeal rights or of the full justification for its denial of benefits, Chuck nevertheless had reason to know of the Plan's final repudiation of his claim by no later than March 1992, such that his claim is time-barred. In particular, we note a number of factors that, taken together, close off any possibility that Chuck could have reasonably believed the denial of his benefits was not final, notwithstanding the Plan's violation of § 1133.

First, Chuck admits that he knew even before resigning in 1980 that HP was going to take the position that he was not eligible for further pension benefits beyond those to which he was entitled at the decreased vesting rate. A claimant in such a position is clearly on heightened notice that communications from the plan may reflect a final denial of eligibility for the benefits claimed.

Second, the Plan then *did* consistently communicate to Chuck that it was taking the position he expected. As early as January 1981, a Plan administrator sent Chuck a letter affirming the decrease in his vesting credit, and HP did not subsequently waver in its position with respect to the benefits due to Chuck under the pension plan at issue.

Third, Chuck had actual notice that a lump sum payment, if made, would constitute his only payment option. The Retirement Benefit Claim Form that Chuck received in December 1980 can only be read as providing Chuck with at most two options: a lump sum payment payable soon after his termination, or a life annuity commencing at age 65.[4] In his

---

[4]When Chuck received this form, every annuity option on it had been crossed out with the annotation "N/A," leaving only the option, pre-selected and completed for Chuck, of receiving a lump sum payment. Chuck alleges that this sole option was trumped by the fact that he never

own declaration, however, Chuck acknowledges that he reads the instructions on this form as informing him that if he were to receive a life annuity at age 65, he "would **not** be eligible for . . . a lump sum payment." Chuck therefore admits that receipt of a lump sum payment would preclude his eligibility for further benefits at age 65.

Fourth, Chuck had notice that his acceptance of payment by lump sum would be irrevocable. The same Retirement Benefit Claim Form prominently notified Chuck that "[a]fter termination, the options are restricted as follows: . . . Once a lump sum benefit payment has been elected or approval for lump sum payment obtained, the choice is irrevocable."

Fifth, Chuck subsequently accepted the Plan's check constituting a lump sum payment in the amount set by HP, and there is no indication in the record that Chuck's acceptance of that check was in any way conditioned on the reservation of his claim to greater benefits. Indeed, there is no evidence that Chuck communicated further with HP regarding this dispute for over a decade after accepting the lump sum payment.

Sixth, when Chuck did raise the issue again with HP, a Plan administrator sent Chuck a letter in March 1992 noting that the Plan had paid Chuck $3,269.06 in 1981 and unequivocally announcing that "[n]o further retirement benefits are payable from our U.S. plans." HP offered no indication that further consideration of his claim was pending or could be invoked.[5]

_____

signed or returned the form to HP, in light of the form's prominent instructions—not crossed out—specifying that the failure to make a timely election would result in the payment of benefits as an annuity commencing at age 65. Because Chuck appeals a grant of summary judgment against him, we afford Chuck every benefit of the doubt in interpreting this evidence. *Wetzel*, 222 F.3d at 646. In light of his subsequent, informed acceptance of a lump sum payment, however, Chuck's reliance on these instructions is immaterial.

[5]Because Chuck denies that he ever had access to any relevant Plan documents, and because nothing in the record indicates otherwise, whether the

**[9]** These six factors, in combination, convince us that Chuck could not have reasonably believed but that his claim had been finally denied. To recap: Chuck had actual notice of the position HP was going to take regarding the amount of benefits owed Chuck, HP then took that position, and Chuck accepted a lump sum payment in that amount; Chuck also had actual notice that his unconditional acceptance of the lump sum payment would effectively constitute an irrevocable waiver of any possible right to an additional payment in an alternative form; and when Chuck brought his dispute to HP's attention years later, HP's denial could not have been plainer or more consistent with its earlier views. Chuck thus had no reasonable basis for believing that the handling of his benefits claim was not final with respect to either the quantity of benefits owed or the method of their payment. On the contrary, Chuck's own actions and understandings play a large role in foreclosing the possibility that he did not have reason to know his claim had been conclusively denied.

**[10]** We do not address whether fewer than all six of these factors would be sufficient to bar Chuck's claim. We hold only that the circumstances in this case leave little doubt that the Plan's failure to inform Chuck of its review procedures, or of the specific plan provisions on which the benefits denial was based, did not give Chuck any reason to believe that the denial was not final, for he was informed both before and long after accepting the lump sum payment that his acceptance of it effectively settled his account. Therefore, we hold that Chuck's cause of action accrued, at the latest, when he received the March 1992 letter announcing that "[n]o further retirement benefits are payable from our U.S. plans." Since the record reflects that Chuck replied to this letter (and hence had received it) by the end of the same month, the six-year

---

Plan adhered to the terms of those documents does not play a role in our inquiry whether Chuck "ha[d] reason to know" his benefits claim had been denied. *Wetzel*, 222 F.3d at 649.

statute of limitations expired no later than the end of March 1998, well before Chuck filed his complaint in district court in December 2003. His claim for benefits is therefore time-barred under ERISA's statute of limitations.

## IV

Chuck also brings claims seeking statutory damages under ERISA for the Plan's failure to provide him with Plan-related documents. We hold that Chuck is not a "participant" as defined in ERISA, as his claim for benefits is time-barred on account of his own actions, and that he therefore lacks standing to seek statutory damages under ERISA.

[11] Chuck's claims arise under 29 U.S.C. § 1132(a)(1)(A), which allows a "participant or beneficiary" to sue for relief under § 1132(c). Section 1132(c), in turn, provides that if a plan fails to provide a claimant with certain requested documentation promptly, then the court may order the plan administrator to pay a claimant up to $100 per violation per day of delay. Specifically, Chuck claims that the defendants are liable to him under this provision because they failed to provide him with documentation about employee benefits, a summary plan description, or annual reports, as required by 29 U.S.C. §§ 1021-1024.

If Chuck is not a "participant or beneficiary" of the Plan, however, he lacks standing to bring these claims under § 1132(a)(1). *See Crotty v. Cook*, 121 F.3d 541, 544 (9th Cir. 1997). As Chuck does not claim to be a beneficiary,[6] the issue here is whether Chuck is a "participant," a term that ERISA defines in relevant part as "any . . . former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7).

---

[6]ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

The Supreme Court has held that, "[i]n order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117-118 (1989). Chuck does not contend that he fits into the second category, so the issue we face is whether Chuck had a colorable claim that he would prevail in a suit for benefits. Our examination concerns Chuck's status as of the time he filed his complaint. *See McBride v. PLM Intern., Inc.*, 179 F.3d 737, 749-50 (9th Cir. 1999).

As a preliminary matter, we note that Chuck cannot bootstrap standing based on this same claim for statutory damages under § 1132(c), because awards for damages under ERISA do not qualify as a possible "benefit" for which a participant may become eligible under 29 U.S.C. § 1002(7). *See Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986), *abrogated on other grounds by Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1455 (9th Cir. 1995). Instead, Chuck must rely on his claim under § 1132(a)(1)(B), which challenged directly the Plan's denial of pension benefits.[7]

**[12]** As we have discussed above, however, Chuck's claim for benefits was clearly time-barred when he filed this suit, in light of Chuck's own actions and understandings. In agreeing with the district court's decision on summary judgment that Chuck's benefits claim is time-barred, we have necessarily concluded that no reasonable juror could have decided that issue in Chuck's favor. *See, e.g., El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005). Accordingly, it is certain that

---

[7]Contrary to HP's arguments, *Kuntz* does not resolve the standing question in this case, for in *Kuntz* the only claims raised were for statutory damages. Here, Chuck also brought a claim for benefits. *Cf. Kuntz*, 785 F.2d at 1411 ("Former employees who have neither a reasonable expectation of returning to covered employment *nor a colorable claim to vested benefits* simply do not fit within the 'may become eligible' language of § 1002(7)") (emphasis added).

Chuck's claim is time-barred, and a claim that is clearly time-barred because of the claimant's own actions is not "colorable" for the purposes of establishing ERISA standing. *See Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir. 1995). At the time he initiated this lawsuit, Chuck therefore was not a plan "participant" under § 1002(7), and thus he lacks standing to bring his claims against the Plan under § 1132(a)(1)(A).

## V

Chuck also brings claims for breach of fiduciary duty, although it is not clear from the face of the complaint or from his briefs which of several types of fiduciary claims he means. On the one hand, § 1132(a)(2) allows suits to enforce a plan's fiduciary obligations under § 1109(a), so long as the recovery for that action inures not merely to an individual claimant but rather "to the benefit of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). More likely, Chuck means to argue that he has a claim under § 1132(a)(3), which allows fiduciary claims for "appropriate equitable relief" to redress violations of other sections of ERISA, or that his benefits claim under § 1132(a)(1)(B) contains a fiduciary dimension. *See generally Varity Corp. v. Howe*, 516 U.S. 489, 512-515 (1996).

Regardless of what sort of fiduciary claim Chuck believes he has raised, the statute is clear that to bring any of them Chuck must be a "participant."[8] Our decision above that

---

[8]Section § 1132(a)(1) allows suits by a "participant or beneficiary"; § 1132(a)(3) by a "participant, beneficiary, or fiduciary"; and § 1132(a)(2) by all of these or by the Secretary of Labor. As noted above, Chuck does not claim to be a beneficiary, and he obviously is not a fiduciary of the plan or the Secretary. *See* 29 U.S.C. § 1002(21)(A) (defining fiduciary).

We note that to have standing for his benefits claim under § 1132(a)(1)(B), Chuck must likewise be a "participant." Our examination of the statute of limitations for that claim was a necessary predicate of our standing determination, but our resulting conclusion that Chuck was not a "participant" ultimately deprives Chuck of standing to bring that claim, too.

Chuck is not a plan participant likewise deprives him of standing to bring his claims for breach of fiduciary duty.

## VI

For the foregoing reasons, we agree with the district court that summary judgment for the defendants is appropriate. Chuck's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) is barred by ERISA's statute of limitations. Because Chuck does not have a colorable claim for benefits, he lacks standing to bring his claims under ERISA.

**AFFIRMED.**