**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VALERIE J. WITHROW, FKA Valerie
J. Hunt,
              *Plaintiff-Appellant,*

              v.

BACHE HALSEY STUART SHIELD,
INC., SALARY PROTECTION PLAN
(LTD),

              *Defendant-Appellee.*

No. 09-55024

D.C. No.
CV-06-0369 JAH
(RBB)

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
October 4, 2010—San Francisco, California

Filed August 23, 2011

Before: Kim McLane Wardlaw, William A. Fletcher,
Circuit Judges, and Robert J. Timlin,* District Judge.

Opinion by Judge Timlin

---

*The Honorable Robert J. Timlin, United States District Judge for the
Central District of California, sitting by designation.

---

**COUNSEL**

Susan L. Horner, Miller, Monson, Peshel, Polacek, & Hoshaw, for the plaintiff-appellant.

Victoria E. Fuller, Huggs, Fletcher & Mack LLP, for the defendant-appellee.

---

**OPINION**

TIMLIN, District Judge:

Valerie Withrow appeals the district court's dismissal of her ERISA action against Bache Halsey Stuart Shield, Inc.

Salary Protection Plan ("Bache Halsey") as not timely filed. We have jurisdiction pursuant to 28 U.S.C. § 1291. We hold that the district court erred in dismissing her action, and accordingly, we reverse.

## I.

## BACKGROUND

Ms. Withrow was employed by Bache Halsey as a stockbroker in 1979, which paid her on a commission basis. Bache Halsey provided her with long-term disability coverage under the Bache Halsey Stuart Shield, Inc. Salary Protection Plan ("plan"), as it did for all its employees. The plan is insured by a group disability policy issued by Reliance Standard Life Insurance Company ("Reliance").[1]

Starting in 1982, Withrow had been disabled periodically from her employment, due to degenerative disc disease with chronic lumbar pain, as well as other various medical conditions. She has been totally disabled from employment from December 6, 1986 to the present.

Around January 15, 1987, Withrow applied for long-term disability benefits. Some time in the beginning of 1987, Withrow had a conversation with an employee of Reliance, Dominic Lorenzo, concerning Withrow's belief that she should have been receiving the maximum benefit under the plan of $5,000 per month, rather than the $3,950 to which Reliance had calculated she was entitled. At that time, they spoke at length and reviewed Withrow's records. According

---

[1]Although Bache Halsey is the named party defendant in this ERISA action and Reliance is not a party, the discussion will relate in most part to the provisions of Reliance's group disability policy ("the policy"), which funds and insures the plan's benefits for its members. The policy contains the provisions which apply in this case and therefore must be interpreted by this court.

to a letter written by Withrow in 1990, Lorenzo explained "how the timing worked" for ERISA claims.

Three years later, on August 14, 1990, Withrow again called Reliance, saying that she believed there was an error in the amount of her benefits. At that time, she was advised by Reliance to put her concerns in writing, but she was not told of any time deadlines within which to do so. Withrow then wrote to Lorenzo on October 1, 1990. In that letter, she said she was "not convinced" she was receiving the proper benefits and asked that Lorenzo review her file and discuss the matter with her until she felt "satisfied that the issue of the benefit amount [was] at rest."

Withrow did not receive a response to that letter, and she wrote another letter to Lorenzo on November 5, 1990 asking Lorenzo to respond. According to a notation made by a Reliance employee on that letter, someone at Reliance called Withrow after November 5, 1990 and left a message on her answering machine, stating that Reliance's "original determination of [her] salary" stayed the same.

Twelve years then passed, with no communication between Withrow and Reliance other than her monthly receipt of a disability check. Then, in January of 2002, Withrow called Joseph Tierney, a Benefits Manager at Bache Halsey (which by then had changed its name to Prudential Securities) to say that she was concerned her benefits were being underpaid based on a miscalculation of her maximum earnings for the years 1985 and 1986. At that time, Tierney spoke to someone at Reliance, who told him that the benefits calculation was correct. Following her correspondence with Tierney, no one contacted Withrow.

Five months later, Withrow wrote to Tierney, asking if he could restore her lost income "to its proper level" and enclosing documents regarding her disability benefit payments from Reliance.

A week later, Withrow wrote to Rob Loy, Manager of LTD claims at Reliance, requesting that he help her restore what she believed to be a significant underpayment of her disability benefits. No one responded.

On June 28, 2002, Withrow called Joseph C. Fischer, Jr., a supervisor and Senior Managing Benefit Consultant at Reliance, to ask for his assistance in obtaining an audit for her claim. She told him she had been trying for months to have her benefits resolved. Loy responded that Reliance "needed a little more time to complete [its] research, given that she has been on claim for 16 years." He told her that her claim file was being reviewed, and someone would give her a call in a few days.

Three and a half months later, on October 16, 2002, Withrow again wrote to Mr. Loy and provided him with more information to support her claim that her benefits were calculated incorrectly. When she received no response, she wrote another letter to Mr. Loy on November 12, 2002; in that letter, she noted that, if no reasonable settlement was reached within 20 days, she planned to request her attorney take action.

Loy responded to Withrow by letter on February 12, 2003, thanking her for her patience while "the details of the captioned claim were investigated and reviewed" and explaining that the investigation of her claim had been difficult as the claim period dated back to 1986. He also explained that Reliance had researched her claim and found that its calculation of her benefits was correct, and her claim was denied. He also informed her that she could appeal the denial of her underpayment claim.

On July 21, 2003, Withrow presented an appeal to Reliance. On January 14, 2004, someone in the Reliance Standard Quality Review Unit left a message for her attorney indicating that Reliance was upholding its denial of her claim. Reliance never issued a written decision.

On February 16, 2006, Withrow filed her complaint in federal district court. After a bench trial, the district court dismissed her complaint as untimely. Withrow timely appealed.

## II.

Our jurisdiction arises under 28 U.S.C. § 1291, and we review *de novo* whether an ERISA claim is barred by the applicable statute of limitations. *See LaMantia v. Voluntary Plan Adm'rs*, 401 F.3d 1114, 1118 (9th Cir. 2005). The district court's factual findings are reviewed under the "clearly erroneous" standard. *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 732-33 (9th Cir. 2006).

## III.

**[1]** There are two parts to the determination of whether a claimant's ERISA action is timely filed: we must determine first whether the action is barred by the applicable statute of limitations, and second whether the action is contractually barred by the limitations provision in the policy. *See Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643 (9th Cir. 2000) (en banc). The district court found Withrow's complaint to be untimely under both the applicable statute of limitations for ERISA claims and also the limitations provision in the policy, because she had reason to know in 1990 that her claim regarding miscalculated benefits was denied. We conclude the district court erred regarding both the timeliness of Withrow's complaint under the ERISA statute of limitations and the application of the policy's contractual limitation provision to Withrow's claim. Accordingly, we reverse and remand to the district court for further proceedings.

## A.   ERISA STATUTE OF LIMITATIONS

We first address whether Withrow's claim is time-barred under ERISA's statute of limitations. Bache Halsey argues,

here and in the district court, that Withrow had reason to know in 1990 that her claim regarding the miscalculation and underpayment of disability benefits had been denied, because she had been contacted by someone at Reliance who explained that the calculation of her disability benefits was correct and would remain the same. Withrow contends that her claim only accrued when she received notice from Reliance that her administrative appeal had been denied on January 14, 2004.

**[2]** Withrow initiates this action under 29 U.S.C. § 1132(a)(1)(B), which authorizes a claim by a benefit plan participant "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." ERISA does not provide its own statute of limitations for suits to recover benefits under 29 U.S.C. § 1132(a)(1)(B). Under Ninth Circuit precedent, district courts must apply the state statute of limitations that is most analogous to an ERISA benefits-recovery program. *Wetzel*, 222 F.3d at 646. In this case, California's four-year statute of limitations for contract disputes applies. *See id.* at 647 & n.3.

**[3]** However, federal law governs the issue of when an ERISA cause of action accrues and thereby triggers the start of the limitation period. *See Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1188 (9th Cir. 2010). An ERISA cause of action accrues "either at the time benefits are actually denied, or when the insured has reason to know that the claim has been denied." *Wetzel*, 222 F.3d at 649 (internal citations omitted). A claimant has a "reason to know" under the second prong of the accrual test when the plan communicates a "clear and continuing repudiation of a claimant's rights under a plan such that the claimant could not have reasonably believed but that his or her benefits had been finally denied." *Wise*, 600 F.3d at 1188 (citation omitted); *Martin v. Constr. Laborer's Pension Trust for S. Cal.*, 947 F.2d 1381, 1384 (9th Cir. 1991).

**[4]** Withrow's benefits were "actually denied" on January 14, 2004, when her attorney was informed by phone that her appeal had been denied. *See Wetzel*, 222 F.3d at 650 (holding that benefits were not "actually denied" until the appeal was denied or the time for appeal had run); *LaMantia*, 401 F.3d at 1117-18. If Withrow's claim accrued on that date, her complaint, which was filed on February 16, 2006, was timely under the applicable ERISA four-year statute of limitations.

We now turn to the second prong of the accrual test to determine whether Withrow's cause of action may have accrued earlier than the date her benefits were "actually denied" because of a clear and continuing repudiation of her rights by Reliance such that she "could not have reasonably believed but that her benefits had been finally denied." *See Wise*, 600 F.3d at 1188.

**[5]** The district court found that Withrow's ERISA cause of action for underpayment of benefits did accrue earlier than the actual denial, in 1990, because at that time she had "reason to believe" the calculation used by Reliance in determining the amount of her benefits was incorrect. The court stated as follows in its Conclusions of Law No. 5: "In this case, plaintiff had reason to believe the calculation was incorrect as early as 1990, when plaintiff called the plan to inquire about underpayment in August 1990, and subsequently wrote a letter to formally inquire about the alleged underpayment in October 1990. Plaintiff was advised at that time that the plan would not increase her benefits. Plaintiff received monthly benefits reflecting the alleged miscalculated amount for nearly twelve years. Plaintiff did nothing further to pursue her claim until May 2002."

At the outset, we disagree with the district court's conclusion in its Conclusion of Law No. 5 that Plaintiff was advised in October 1990 that the plan would not increase her benefits. We note that, in its Findings of Fact No. 9, the district court also stated, in reference to Withrow's October 1, 1990 letter,

that "the record is unclear as to whether the plan responded to this inquiry." This directly contradicts its Conclusion of Law No. 5.

**[6]** Our independent review of the record convinces us that it is unclear what exactly transpired between Withrow and Reliance in 1990. What is clear is that Withrow called and then wrote two letters to Reliance stating her concerns. The substance of Reliance's response is far less clear. The only evidence of Reliance's response is a handwritten notation by a Reliance employee on one of Withrow's letters to Reliance that someone had called Withrow back regarding her inquiry and left a message on her answering machine that the "original determination of salary stays the same." It is unclear who made the call, what exactly was said, and whether Withrow was provided with guidance concerning the steps to take if she wished to submit her claim for review.

**[7]** Based on this evidence, such a response is insufficient to constitute a "clear and continuing repudiation" of Withrow's claim such that she "could not have reasonably believed" that the plan had not finally denied her claim. If such a response was sufficient to constitute a "clear and continuing repudiation," then virtually any correspondence or communication with a plan concerning the calculation or awarding of benefits could be interpreted as such. Such a reading of the "clear and continuing repudiation" test goes well beyond what our circuit has previously recognized.

The district court relied on our decision in *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006), as support for its analysis. In *Chuck*, we made clear that only an "unusual combination of circumstances" would warrant a finding that a claim was time-barred despite a plan's failure to comply with its duties of proper notification and review under ERISA. Otherwise, failure to " 'provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied' " and failure to " 'afford a reason-

able opportunity to any participant whose claim for benefits has been denied for a full and fair review' " will "militate[ ] strongly against a finding that the statute of limitations has begun to run." *Id.* at 1030, 1032 (quoting 29 U.S.C. § 1133). We find the "unusual combination of circumstances" present in *Chuck* to be readily distinguishable from the series of events that occurred between Withrow and Reliance.

The circumstances in *Chuck* that demonstrated he had reason to know of the final denial of his claim because of a clear and continuing repudiation of his claim such that he could not have reasonably believed but that his claim was time-barred are as follows: 1) he knew that the plan was going to take the position for further pension benefits beyond what he had already received; 2) the plan consistently communicated to Chuck that it was taking the position he expected; 3) Chuck had actual notice that a lump sum payment of benefits, if made, would constitute his only payment option; 4) Chuck had actual notice that his acceptance of a payment by lump sum would be irrevocable; 5) Chuck subsequently accepted the plan's check constituting a lump sum payment in the amount set by the plan; and 6) when Chuck did raise the issue again with the plan, a plan administrator sent Chuck a letter noting that the plan had paid him and unequivocally stating that "no further retirement benefits are payable from our U.S. plans." *See id.* at 1037. Based on these circumstances, we held that Chuck had no reasonable basis for believing that the handling of his benefits claim was not final, and that "Chuck's own actions and understandings play a large role in foreclosing the possibility that he did not have reason to know his claim had been conclusively denied." *Id.* at 1038.

**[8]** Here, Withrow's situation is similar in only one respect: she knew as early as 1987 that Reliance was taking the position that its calculation of her disability benefits was correct. However, Withrow's circumstances diverge from Chuck's at that point. Chuck was provided with actual notice that any acceptance of benefits would be irrevocable.

Although Withrow knew that Reliance had taken the position its calculation was correct, she was never provided with anything from Reliance that would give her reason to know that her acceptance of continued payment of benefits amounted to an irrevocable or final determination by Reliance of the amount of her benefits and a denial by it of a claim concerning that calculation. Further, when Chuck contacted his plan to raise the issue of his benefits after he accepted their payment, he was told unequivocally that he would receive no further benefits. Withrow's experience with Reliance was very different. In fact, in 2002, twelve years after Withrow's first conversations with Reliance about the underpayment of her benefits, Reliance encouraged her to submit more documentation and to prove the benefits calculation was wrong.

**[9]** Further, Withrow's actions throughout the approximately fifteen years between her initial contact with Reliance and the phone call denying her appeal demonstrate that she did not ever understand that Reliance had finally denied her claim that her benefits were being underpaid. Rather, she reached out repeatedly to Reliance to voice her concerns and was met with indications that the plan disagreed but also with encouragement to her to continue communicating with the plan and to provide more information.

We therefore conclude that Withrow's claim did not accrue in 1990 with regard to the ERISA statute of limitations, as the district court found, but rather accrued when her claim was finally denied on January 14, 2004. Withrow's action, filed on February 16, 2006, was commenced within the four-year statutory limitations period for ERISA claims.

## B.   LIMITATIONS PROVISION IN POLICY

**[10]** The next inquiry is whether Withrow's action is contractually barred by the limitations provision in the policy. Withrow's policy provides that no legal action may be brought "after the expiration of three years . . . after the time

written proof of loss is required to be furnished." The proof of loss provision of the policy states that this proof of loss must be furnished "in case of claim for loss for which this Policy provides any periodic payment contingent upon continuing loss, within 90 days after the termination of the period for which the company is liable." Both provisions are required by California law. *See* Cal. Ins. Code §§ 10350.7, 10350.11.

A now-overruled decision of our circuit, *Nikaido v. Centennial Life Ins. Co.*, 42 F.3d 557 (9th Cir. 1994), held that an identical contract provision stated both the time that claims accrue and the statute of limitations for ERISA claims. *Id.* at 559-60. *Wetzel* overruled *Nikaido* and, as discussed above, held instead that (1) California's four-year statute of limitations for contract disputes applied to ERISA claims, and (2) under ERISA, claims accrue when the applicant knows her application has been denied. 222 F.3d at 648-49. *Wetzel* also held, however, that applicants for long-term disability benefits must meet both ERISA and contractual limitations with regard to the length of the limitation period and the accrual date. *Id.* at 650. The *Wetzel* court did not decide how this contract provision should be interpreted and instead remanded that question to the district court. *Id.* at 650-51.

**[11]** Thus, contract limitations provisions in benefit policies still have force independent of ERISA in long-term disability benefit cases. Here, there is no dispute that the contract terms create a shorter limitations period (three years instead of four), but they also provide that claims accrue as a contractual matter "within 90 days after the termination of the period for which the company is liable." We have found it difficult thus far to define "termination of the period for which the company is liable." The *Nikaido* court, struggling to fit language and logic together, ultimately held that each month constitutes a "period for which the company is liable." 42 F.3d at 560. Thus, under *Nikaido*, an applicant for disability benefits had to send in renewed proof of disability as proof of loss 90 days after each month in which she received a disabil-

ity check. However, *Nikaido* has been overruled, and at present, the Ninth Circuit has not interpreted the phrase "the period for which the company is liable." The *Wetzel* court offered some observations suggesting that *Nikaido* had misinterpreted the contract provision — specifically, it noted that the question of what disability benefits an applicant deserves in the first instance is different than the question whether a payment in a particular month was correct—but it did not suggest a plausible interpretation of the mandatory contract language. *See* 222 F.3d at 650.

**[12]** However, we need not reach the thorny issue of what the phrase "the period for which the company is liable" means with regard to disputes over whether or not an applicant is actually disabled or is entitled to benefits at all. At oral argument, counsel for Bache Halsey forthrightly conceded that the limitations provision in the policy here does not apply to disability cases in which the claimant contests the amount of benefits or claims the benefits have been miscalculated. Counsel acknowledged that the only time bar that applies in this case was that created by ERISA, the four-year California statute of limitations. We agree with counsel's concession that the language of this provision, as mandated by California Insurance Code § 10350.7 and § 10350.11, is meaningless as applied to disputes over the proper calculation of the amount of monthly disability benefits, as opposed to disputes over whether an applicant is entitled to benefits at all.

## CONCLUSION

Accordingly, we VACATE the judgment of the district court dismissing the ERISA claim in this action and REMAND for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**